NOROSKI, APPELLANT, *v.* FALLET, APPELLEE.

[Cite as Noroski *v.* Fallet (1982), 2 Ohio St. 3d 77.]

(No. 82-159—Decided December 22, 1982.)

*Murray & Murray Co., L.P.A.,* and *Mr. James T. Murray,* for appellant.
*Flynn, Py & Kruse Co., L.P.A.,* and *Mr. John A. Coppeler,* for appellee.

*Per Curiam.* The only evidence of the release at issue here is a tape recording of a telephone conversation between appellant and the adjuster for appellee's insurer. That conversation appears in the record as two exhibits: the first an eight-page transcription regarding the facts surrounding the accident, and the second a one-page transcription, apparently from the same telephone conversation, which purports to be the recorded settlement agreement. That conversation, as transcribed, was as follows:

"This is JEANNE CAMPBELL speaking: I am discussing settlement of a claim with MR. FRANK NOROSKI regarding his collision of September 25, 1975 in Oak Harbor, Ohio. This involved ERVIN FALLET as our insured.

"Q. Mr. Noroski would you please state your full name and address once again?

"A. Frank Edward Noroski, 117 Center Street, Apt. 6, Oak Harbor, Ohio 43449.

"Q. Do you realize I am recording this agreement and do I have your permission to do so?

"A. Yes.

"Q. Do you agree that the draft I will be sending you in the total

amount of $754.40 is the full and complete settlement for your bodily injuries as well as the property damage resulting from this accident?

"A. Yes.

"S. [*sic*] Okay this concludes the recorded settlement with Mr. Frank Noroski."

The issue before the court is whether the recorded telephone conversation relied upon by appellee constitutes a valid and enforceable release. A release, or compromise agreement, is a particular kind of contract, and, like other contracts, requires a definite offer and an acceptance thereof. 15 Ohio Jurisprudence 3d 517, Compromise, Accord, and Release, Section 4. A release must be the result of a meeting of the parties' minds in order to be binding. See 30 Ohio Jurisprudence 2d 801, Insurance, Section 875. While this court has previously recognized that an oral settlement agreement requires no more formality and not greater particularity than appears in the law for the formation of a binding contract, see *Spercel* v. *Sterling Industries* (1972), 31 Ohio St. 2d 36, 39 [60 O.O.2d 20], neither can less formality and less particularity be countenanced when an oral release is brought before the court for enforcement.

The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other. See 17 Ohio Jurisprudence 3d Contracts 445-446, Section 17. Our examination of the record and the facts surrounding the purported release leads us to the conclusion that no meeting of the minds occurred in this case. The conversation which appellee seeks to interpose as an affirmative defense contains no reference to the term "release," speaking instead of "full and complete settlement." Bearing in mind that appellant, a civil engineer, had little familiarity with the legal ramifications of "settlement" or "release," his testimony concerning his understanding of the December 31 telephone conversation is elucidating:

"A:  * * * the next time I believe I talked to her, which was December 31st, there were medical claims and I am not totally naive of what complications can come out of a back injury but at that time I wasn't about to settle under any conditions because there was the possibility of future medical problems and I thought I addressed that to her very clearly.

"* * *

"A:  Well again with that conversation in December, I left her, I believe, with the impression that these were bills that I accrued to that date, that I didn't plan on spending any time in the hospital and I hadn't planned on any major surgery and that I had no intentions of racking up hundreds of dollars in bills and sending to her every couple of months. And that I would, in fact, get a hold of her if I felt things were going to get serious and I really had no intention of getting to this point and that I wanted to leave the thing open just in case.

"* * *

"A:  Well, my understanding [of the effect of the unsigned written

release previously mailed to plaintiff] would be that I would have to sign a release, that is a piece of paper that said release in order that I wouldn't have any recourse in the future and that is what I honestly believed was the understanding at that time."

This testimony indicates that appellant never understood his conversation to constitute a release of present *and all future* claims arising out of the accident. Moreover, the draft sent to appellant as a result of this conversation contained no indication that it constituted a release. Testimony indicated that the insurer's standard operating procedure for all oral releases included stamping release wording on the reverse side of the draft. The failure to stamp such a release on this draft further indicates that no release was intended. Finally, the piecemeal manner in which the recorded statement was made by the adjuster renders unavailable further clarifying statements concerning the meaning of the purported release which may have been made in the conversation.

Given the imprecise language contained in the recorded statement, appellant's testimony concerning his understanding of the conversation and his previous refusal to sign a printed release form, together with the failure of the insurer to take action consistent with a release and the absence of a verified context in which the statements were made, we hold that no meeting of the minds occurred during the telephone conversation of December 31 sufficient to constitute a binding release of claims. Accordingly, the lower courts erred in dismissing the complaint, and the cause is remanded for further proceedings.

*Judgment reversed and cause remanded.*

CELEBREZZE, C.J., W. BROWN, SWEENEY and C. BROWN, JJ., concur.

LOCHER, HOLMES and KRUPANSKY, JJ., dissent.

HOLMES, J., dissenting. As stated correctly by the majority, an oral settlement agreement requires no more formality, nor greater particularity, than a written instrument to form a binding contract. Thus, the oral statements made by and between Noroski, the insured, and the young lady insurance adjuster, which statements were recorded upon tape, may, when reviewed by a trier of the facts, be determined to constitute a binding contract.

The trial court bifurcated the issue of the affirmative defense of release and conducted a hearing on this matter without a jury, and found that the recorded conversation constituted a valid and enforceable release of all claims arising from the accident. The court of appeals, relying upon *McBennett* v. *Piskur* (1965), 3 Ohio St. 2d 8 [32 O.O.2d 5], held that the trial court could properly determine the issue of the existence and validity of an alleged release without the intervention of a jury.

Although this case deals with a tape recorded telephone conversation which is alleged to constitute the release, the same basic approach may be taken by the trial court, as did the court in *McBennett, i.e.,* sever the issue of the release from the case in order to determine whether there is sufficient evidence to submit to a jury upon the issues of the existence of any such agreement, any fraud in the inducement of such agreement, and any mistake, mutual or unilateral, which could substantiate avoidance of such release.

Here, the trial court listened to all the evidence adduced on these issues, including the testimony of the appellant, the insurance adjuster representing the insurance company, and the tape recording constituting the alleged release. As to the tape recording offered in evidence here, there is no dispute that the adjuster for the insurance company stated on the tape, which was a recorded telephone conversation of December 31, 1975, that she was recording the conversation of settlement of the appellant's insurance claim against the company.

Additionally, the tape more specifically sets forth the nature of the discussion, as follows:

"Q. Do you agree that the draft I will be sending you in the total amount of $754.40 is the *full and complete settlement* for your bodily injuries as well as the property damage resulting from this accident? (Emphasis added.)

"A. Yes."

At the hearing of this matter before the court, and after listening to a replay of the tape, the appellant was asked:

"Q. Did you hear yourself clearly say 'yes' after she asked if that would or if you agreed that that would be a full and complete settlement?"

The appellant, in answer thereto, stated:

"A. Yes, I heard, 'yes.' "

The trial court also had evidence before it that the appellant received the first draft in payment of his damages in October 1975 in the amount of $454.76, and that, thereafter, on December 3, 1975, he submitted additional medical bills to the insurance company in the amount of $119.10. The evidence showed that the taped telephone conversation followed on December 31, 1975, with a resulting second draft in the amount of $299.64 sent to the appellant. The evidence further indicates that the appellant did not contact the company's adjuster after the December 31st telephone conversation, even though he had incurred the additional expenses now sought to be recovered which evidence as argued by the appellee, would be additionally reasonably supportive of the conclusion that the appellant believed that the agreement of December 31, 1975 constituted a complete release.

It would appear that there was a proper quantum of evidence to show the existence of a contract of release between the parties. The further issue to be determined by the trial court was whether there was sufficient evidence adduced as to any fraud or mistake which might rise to a jury issue.

The trial court, based upon what was presented to it, determined such question in the negative and found for the appellee. I do not find the conclusion of the trial court to be against the manifest weight of the evidence.

As to the question of mistake in the entering of the release of December 31, 1975, the appellant takes the position that such a release was for the known extent of the injuries and the medical bills and expenses at that time. He states that his injuries turned out to be more serious than he had anticipated, and his resulting costs much greater. However unfortunate the result may appear for the appellant, it still remains a fact that a release had been entered into by the parties, and a later discovery of a mistake of fact by one of the parties will offer no ground for the setting aside of the release.

Accordingly, I would affirm the judgment of the court of appeals.

LOCHER and KRUPANSKY, JJ., concur in the foregoing dissenting opinion.