OPINION
Defendant-appellant Ellen Schneiderman-Welch appeals from the September 2, 1998, Judgment Entry of the Stark County Court of Common Pleas. Plaintiff-appellee is Rita I. Thorn.
 STATEMENT OF THE FACTS AND CASE
In 1993, appellant began residing in a home located in the City of Canton that was owned by appellee. Appellee's counsel, in June of 1997, sent appellant's counsel a letter stating that, effective as of July 31, 1997, appellant's month-to-month tenancy would terminate. The effective date of the termination was later extended through the month of August of 1997. On or about September 2, 1997, after appellant failed to vacate the premises by the end of August, appellee served a written eviction notice on appellant. Thereafter, appellee, on September 10, 1997, filed a Complaint in Forcible Entry and Detainer and for damages against appellant in the Canton Municipal Court. Appellee, in her complaint, alleged that appellant continued to "unlawfully and forcibly detain" the subject premises and that appellant owed appellee rent from September 1, 1997, at the rate of $264.90 per month until the premises were vacated. On October 14, 1997, appellant filed an answer and counterclaim. Appellant, in her counterclaim, alleged that the parties had entered into a land installment contract for the sale and purchase of the premises, that she had made all payments requested of her under the terms of the land installment contract, and that appellee had repeatedly misrepresented various material defects in the subject property to induce appellant to enter into the land installment contract. In October of 1997, appellee voluntarily dismissed her complaint without prejudice. On or about October 23, 1997, appellee's counsel again sent appellant's counsel a letter stating that appellant's month-to-month tenancy was not being renewed and would terminate as of November 30, 1997. Appellee then refiled her complaint in the Canton Municipal Court in December of 1997. Pursuant to a Judgment Entry filed on December 16, 1997, Judge Richard J. Kubilus of the Canton Municipal Court ordered that appellee's case be transferred to the Stark County Court of Common Pleas since the amount demanded in appellant's counterclaim exceed the monetary jurisdiction of the Canton Municipal Court. Appellant was served with a written eviction notice on December 13, 1997, demanding that she vacate the subject premises before December 19, 1997. On December 23, 1997, appellee, with leave of court, filed an Amended Complaint in Forcible Entry and Detainer to include a ripe claim for possession of the premises and a reply to appellant's counterclaim. Appellant filed an amended answer and counterclaim on January 5, 1998, along with a response to appellee's reply to the original counterclaim. Appellant's counterclaim contained the same allegations as in her previous counterclaim. A Motion to Dismiss was filed by appellant on January 5, 1998. Appellant, in her motion, requested that appellee's cause of action for forcible entry and detainer be dismissed since appellee had failed to comply with statutory requirements for serving an eviction notice upon a tenant and since there was no service of process of the complaint upon appellant. On the same date, appellant filed a Motion to Strike Appellee's second cause of action pursuant to Civ.R. 12(F). On January 30, 1998, appellee filed memorandums in opposition to both motions. After several continuances, appellee's forcible entry and detainer action came on for hearing before the court on January 30, 1998. Appellant, who is an attorney herself, was present at the hearing and was represented by two attorneys, Joseph R. Scott and Keith C. Ruffner whereas appellee was represented by Attorney Ivan Redinger, Jr. After negotiations conducted in chambers, the parties reached a settlement that was put on the record in the presence of the court. The following is an excerpt from the transcript of the settlement that was put on the record on January 3, 1998: "THE COURT: The Court has been advised by counsel that a resolution has been reached with regard to all issues raised not only by the complaint of the Plaintiff but also by the counterclaim of the Defendant. That the purpose of this record is to memorialize that agreement so that it can be a binding agreement enforced by the Court. It is the Court's understanding that this agreement will be further memorialized in a judgment entry which will make reference to the terms of this agreement and also to a land contract which is to be prepared by counsel in the closing and re-signing of all documents to be on February 9, I believe we said, 1998. And it's my understanding that the terms of the agreement — and, Mr. Redinger, why don't — you had written those down so why don't you take a shot at saying what you understand the terms of the agreement to be, and then, counsel, you can comment on those or add or, when he's completed, all right? MR. SCOTT: Yes, Your Honor. MR. REDINGER: The parties will enter into a land contract which will be incorporated into the Court's judgment entry. Under that agreement the Defendant is to make all payments on the property including but not limited to the mortgage, taxes, insurance, repair costs and utilities. She will be required to pay the, pay the sum of eighteen thousand dollars on or before February 9, 1999. A closing must be done on or before that date. She will agree to pay immediately to the Plaintiff the rent checks that are already in her attorneys' possession for December 1997 and January 1998. For additional costs and closing costs we, the Plaintiff, will agree to pay for the title guaranty and will bring that to closing. The Defendant will pay all other closing costs. The parties agree that court costs are to be applied. The Defendant is to make her payments directly to the bank, I believe that's First Merit, and then she's to provide a copy of whatever receipts she receives to the attention of the Plaintiff. The — this is all contin — the judgment entry will call for the immediate right of Miss Thorn to execute a writ of restitution if the payments are not made in a timely manner, the payments being due on the 9th of each month with a 10 day grace period. All other claims pending between the parties are to be dismissed with prejudice. And I think we also talked about the taxes and insurance, the escrow account. It is the Defendant's obligation to pay taxes as of the date of the signing of this agreement, and it's anticipated then that any balance left, if there is a balance in that account on February 9 of 1999, will be transferred over for her use in her new loan account. I'm not sure if I missed anything. THE COURT: That pretty much summarized what the Court understands the agreement to be that clearly there, there — currently the mortgage payment is being made to First Merit. First Merit is amortizing the loan, and those payments are now going to be made on behalf of the Plaintiff by the Defendant which includes the tax and insurance escrow payment and that at the closing date the taxes will be assumed thereafter by the purchaser Defendant and any escrow tax or insurance funds will be transferred over to her at that time. Now, Mr. Scott, Mr. Ruffner, anything you want to add? MR. SCOTT: No, Your Honor, I believe that covers the agreement. THE COURT: All right. MR. REDINGER: And it's my understanding that Defendant's counsel will be preparing the land contract? THE COURT: Right. MR. SCOTT: That's correct. THE COURT: And the deed will be prepared by the Plaintiff, and it will be placed in escrow and, and I guess held in escrow by Plaintiff's counsel pending the closing, but it's best to get it executed now and have it ready to go. MR. SCOTT: That's correct, Your Honor." Transcript of Proceedings at 3 — 7.
On January 30, 1998, the same day as the hearing, a Judgment Entry was filed stating that the case was settled by agreement of the parties and, therefore, dismissed. Thereafter, a Motion to Enforce the Settlement Agreement was filed by appellant's counsel on August 12, 1998, to which appellee responded on September 1, 1998. Pursuant to a Judgment Entry filed on September 2, 1998, which incorporated a copy of the transcript of the January 30, 1998, settlement agreement, Judge John G. Haas ordered that the settlement be enforced. Judge Haas, in his entry, specifically held as follows: "Specifically, the terms of the settlement are as follows: 1. The defendant is to make all payments on the subject property, including but not limited to the mortgage, taxes, insurance, repair costs and utilities. 2. At the time of closing, which closing is to take place on or before February 9, 1999, the defendant is to pay to the plaintiffs the sum of Eighteen Thousand Dollars (18,000.00). 3. Within one week of the date of this order, defendant is to be [sic] pay to the plaintiff the rent checks that are already in her attorney's possession for the months of December, 1997, and January, 1998. Further, unless a replacement check was issued relative to a check issue to Atty. Tim Watkins, said third check is to be forwarded to plaintiff within one week of the date of this order. In the event a replacement check was issued for said check, evidence of that replacement check is to be forwarded to the plaintiff within one week of the date of this order. 4. The plaintiff is to pay for a title guarantee for the property which will be presented at time of closing, for a purchase price of Eighteen Thousand Dollars ($18,000.00), and the defendant shall pay all other closing costs. 5. Any surplus escrow for payment of taxes and insurance shall be transferred by the Plaintiff to the defendant at the time of the closing. Specifically, this Court is holding that the settlement agreement is clear relative to the fact that Eighteen Thousand Dollars ($18,000.00) is to be paid at closing, and no credit is to be given for amortization."
It is from the September 2, 1998, Judgment Entry that appellant prosecutes this appeal, raising the following assignments of error:
1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ITS JUDGMENT ENTRY OF SEPTEMBER 2, 1998, INCORPORATING THE TRANSCRIPT FROM JANUARY 30, 1998 WHEREIN IT IS STATED THE COURT IS GRANTING APPELLEE THE RIGHT TO AN "IMMEDIATE WRIT OF RESTITUTION" IF APPELLANT WAS LATE WITH THE MORTGAGE PAYMENT. SAID DECISION IS CONTRARY TO LAW AND VIOLATES APPELLANT'S DUE PROCESS RIGHTS AS GUARANTEED BY ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
II. THE TRIAL COURT PLAINLY ERRED IN RULING THAT A SETTLEMENT AGREEMENT EXISTED BETWEN [SIC] THE PARTIES WHEN NO "MEETING OF THE MINDS" OCCURRED AS TO THE PURPORTED TERMS OF SAID AGREEMENT. SAID RULING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
III. NEWLY DISCOVERED EVIDENCE THAT WAS NOT AVAILABLE PRIOR TO THE HEARING ON APPELLANT'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT IS AN ADMISSION AGAINST INTEREST BY APPELLEE AND REPRESENTATIONS MADE IN THE DOCUMENT ARE SO FRAUDULENT OR MISLEADING AS TO INVALIDATE THE JUDGMENT ENTRY OF SEPTEMBER 2, 1998 AS A MATTER OF LAW.
IV. THE TRIAL COURT PLAINLY ERRED AS MATTER OF LAW IN ORDERING THAT THE SALE OF THE PROPERTY "MUST CLOSE" ON OR BEFORE FEBRUARY 9, 1999. APPELLEE'S FAILURE TO SIGN A LAND CONTRACT EXCUSED APPELLANT'S DUTY TO PURCHASE THE PROPERTY ONE YEAR LATER SINCE NO CONTRACT EXISTED FROM WHICH TO ENFORCE APPELLANT'S DUTY TO PERFORM.
V. THE TRIAL COURT PLAINLY ERRED AS A MATTER OF LAW IN ORDERING APPELLANT TO ASSUME ALL THE BURDENS OF OWNERSHIP OF REAL ESTAE [SIC] WHILE REFUSING TO GRANT APPELLANT A VALID DOCUMENT OF TITLE AND/OR CONVEYANCE OF THE REAL ESTATE INTO APPELLANT'S NAME.
VI. THE TRIAL COURT PLAINLY ERRED IN OVERRULING AS MOOT APPELLANT'S JANUARY 5, 1998 MOTION TO SHORTEN RESPONSE TIME, AND IN FAILING TO RULE ON APPELLANT'S SECOND MOTION TO SHORTEN RESPONSE TIME FILED ON JANUARY 23, 1998, and IN SETTING HEARING DATES ON JANUARY 12th, 28th AND 30th, 1998, ALL OF WHICH WERE BEFORE APPELLEE WAS REQUIRED TO RESPOND TO APPELLANT'S DISCOVERY REQUESTS. THE TRIAL COURT'S ACTIONS WERE ARBITRARY, UNFAIR OR CAPRICIOUS AND DENIED APPELLANT DISCOVERY INFORMATION THAT WAS CRUCIAL TO APPELLANT'S CASE. SAID ACTIONS OF THE TRIAL COURT AMOUNT TO AN ABUSE OF DISCRETION.
VII. THE TRIAL COURT PLAINLY ERRED WHEN IT FAILED TO RULE ON APPELLANT'S MOTION TO DISMISS PLAINTIFF'S FIRST CAUSE OF ACITON [SIC] FOR FAILURE TO COMPLY WITH STATUTORY NOTICE REQUIREMENTS IN FORCIBLE ENTRY AND DETAINER ACTIONS ("FED") AND FOR FAILURE OF SERVICE OF PROCESS UPON APPELLANT. SAID DEFECTS RENDERED APPELLANT'S COMPLAINT VOID AB INITIO, THUS THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION OVER THE MATTER.
 II
Appellant, in her second assignment of error, argues that the trial court erred in ruling that a settlement agreement existed between the parties. Since whether or not there was a settlement agreement is relevant to all of appellant's assignments of error, the court shall first consider such assignment. "The result of a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and an acceptance thereof." Rulli v. Fan Co. (1997) 79 Ohio St.3d 374,376, citing, Noroski v. Fallet (1982) 2 Ohio St.3d 77, 79. To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear. Id. "A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." (Footnote omitted.) Id, citing 1 Corbin on Contracts (Rev. Ed. 1993) 525, Section 4.1. In her second assignment of error, appellant contends that there was no meeting of the minds as to the purchase price for the subject property. According to appellant, "the parties agreed in chambers to an amortization of the $18,000.00 purchase price at an interest rate of 9% per annum" rather than to the payment of $18,000.00 at closing. At the hearing on January 30, 1998, appellee's counsel stated that under the terms of the parties' settlement agreement, "[appellant] will be required to pay the, pay the sum of eighteen thousand dollars on or before February 9, 1999. A closing must be done on or before that date." Transcript of proceedings at 4. No reference was made to any interest rate or amortization schedule. Neither appellant, who is an attorney, nor either of the two attorneys who represented her at the hearing objected to the above statement by appellee's counsel as to the parties' agreement. Rather, when appellant's counsel was asked by the trial court if they had anything to add, Attorney Joseph Scott responded as follows: "No, . . . I believe that covers the agreement." Transcript of proceedings at 7. After reviewing the transcript of the January 30, 1998, hearing, this court is of the opinion that the terms of the settlement agreement as to the purchase price were reasonably certain and clear and that appellant and her counsel agreed to such terms. This court further finds that the trial court did not err in finding that a settlement agreement existed between the parties. Appellant's second assignment of error is overruled. I In her first assignment of error, appellant submits that the trial court committed reversible error in its September 2, 1998, Judgment Entry in stating that appellee would be entitled to an immediate writ of restitution if appellant failed to make payments. Appellee's counsel, at the January 30, 1998, hearing specifically reiterated the parties agreement, in part as follows: "[t]he judgment entry will call for the immediate right of Miss Thorn [the appellee] to execute a writ of restitution if the payments are not made in a timely manner, . . ." Transcript of proceedings at 5. Neither appellant nor her counsel objected to such statement. Clearly, appellant, in order to settle her dispute with appellee and with two attorneys representing her, agreed to such term on the record in open court. Such term is, therefore, binding on appellant since there was a meeting of the minds. The trial court, therefore, did not err in including the term entitling appellee to an immediate writ of restitution in its Judgment Entry. Even though Ohio Revised Code Section 5313.05 provides a thirty day "grace period" after the date of a defaulted payment before forfeiture of vendee's interest in a land contract may be enforced, the parties, by their agreement, waived the application of the statute in this case. Appellant's first assignment of error is overruled.
 III
With respect to her third assignment of error, appellant argues that newly discovered evidence in the form of a certified July 21, 1998, letter to appellee from the City of Canton Building Department "is an admission against interest by appellee and representations in the document are so fraudulent or misleading as to invalidate the Judgment Entry of September 2, 1998, as a matter of law." Appellant specifically points to written notations on such document indicating that "20% paid" and "L/C [land contract] coming." However, our review on appeal is limited to those materials in the record which were before the trial court. See State v. Ishmail (1978), 54 Ohio St.2d 402. Since such document is not part of the record in this matter, this court cannot consider it on appeal. Appellant's third assignment of error is, therefore, overruled.
 IV
Appellant, in her fourth assignment of error, argues that the trial court erred in ordering that the sale of the property must close on or before February 9, 1999, when the condition precedent was not met. Appellant specifically asserts that appellee's failure to sign a land contract gives appellant the right to avoid the terms of the settlement agreement. Pursuant to the terms of the settlement agreement put on the record on January 30, 1998, appellant's counsel was to prepare the land contract. Appellant's counsel, however, failed to prepare a land contract that included the terms of the settlement agreement despite appellee's attempts to obtain one. Thus, any failure by appellee to sign land contract was caused by appellant. A party who prevents performance on the part of an adverse party cannot take advantage of such noncompliance or nonperformance by the party obligated to perform under the contract. Gary Crim, Inc. v. Rios (1996), 114 Ohio App.3d 433. Since appellant caused appellee's nonperformance, she cannot take advantage of the same and is not excused from performing the terms of the settlement agreement. Appellant's fourth assignment of error is overruled.
 V
Appellant, in her fifth assignment of error, argues that the trial court erred "in ordering her to assume all of the burdens of ownership of real estate while refusing to grant appellant a valid document of title and/or conveyance of the real estate into appellant's name." According to appellant, the trial court was ordering her to perform a condition both contrary to some undefined law and which is a legal impossibility. At the hearing on January 30, 1998, appellee's counsel stated on the record, without objection from either appellant or her counsel, that "[u]nder that agreement [the land contract] the Defendant is to make all payments on the property including but not limited to the mortgage, taxes, insurance, repair costs and utilities." The same language is contained in the trial court's September 2, 1998, Judgment Entry. Since appellant does not dispute that she agreed to such term, we find that the trial court did not err in incorporating such term into its September 2, 1998, Judgment Entry. Appellant's fifth assignment of error is overruled.
 VI
Appellant, in her sixth assignment of error, argues that the trial court erred in overruling as moot appellant's January 5, 1998, Motion to Shorten Response Time, in failing to rule on her January 23, 1998, Motion to Shorten Response Time, and in setting hearing dates on January 12, 28th and 30th, "all of which were before appellee was required to respond to appellant's discovery requests." Appellant, on January 5, 1998, had filed a Motion to Shorten appellee's response time to appellant's discovery requests to January 10, 1998 "for the reason that a hearing is scheduled on this matter for January 12, 1998." Pursuant to a Judgment Entry filed on January 9, 1998, the trial court deemed appellant's motion moot since the parties had reached an agreement resolving such motion, and had agreed to continue the forcible entry and detainer hearing until January 28, 1998. Appellant's second motion, which was filed on January 23, 1998, to shorten appellee's response time to discovery also, pursuant to a Judgment Entry filed on January 29, 1998, was deemed moot by the trial court since "[p]ursuant to a telephone conversation with Plaintiff's counsel and Defendant's counsel, the parties have reached an agreement with regard to the motion to shorten response time." Thus, as appellee points out, the issues raised by appellant in her sixth assignment of error were resolved by agreement before the January 30, 1998, hearing or at the hearing itself. Appellant's argument, therefore, lacks merit. Appellant's sixth assignment of error is overruled.
 VII
In her final assignment of error, appellant asserts that the trial court erred in failing to rule on appellant's Motion to Dismiss appellee's first cause of action. However, appellant's motion was rendered moot once she entered into the settlement agreement. The trial court, therefore, had no reason to rule on appellant's motion.
Appellant's seventh assignment of error is overruled.
The Judgment of the Stark County Court of Common Pleas is affirmed. The request of the appellee for attorney fees is overruled.
By Edwards, J. Wise, P.J. and Farmer, J. concur