DECISION.
Plaintiffs-appellants Willie and Gladys Donald appeal from the trial court's entry of summary judgment in favor of the defendants-appellees, Midwest Mortgage Banc, Inc., ("Midwest") and Wayne Jones. Because we hold that there are genuine issues of material fact relating to claims for fraud and negligent misrepresentation but that there are no genuine issues of material fact relating to the remaining claim for breach of contract, we reverse in part, affirm in part, and remand the cause for further proceedings on the fraud and negligent-misrepresentation claims.
Willie Donald, acting for himself and his wife, Gladys, met with Wayne Jones, a loan officer for Midwest,[1] on July 1, 1996, to discuss a refinancing plan for three properties: a residence on Trimble Avenue in Cincinnati, Ohio; residential rental property on Mitchell Avenue in Cincinnati, Ohio; and a home on Barretts Lane in Mobile, Alabama. At the meeting, Willie Donald completed and signed a loan application for each property. The three residential loan applications detailed the following information: (1) the Donalds' assets and liabilities, (2) the purpose of each loan, which was to refinance existing loans, (3) the purpose of the refinancing plan, which was to consolidate the Donalds' indebtedness, (4) the original cost for each property, (5) the Donalds' employment history, (6) the family's income and housing information, and (7) other specific declarations. Willie Donald represented on the loan applications that his liabilities at the time included two mortgage loans for the Cincinnati properties, obtained from The Merchants Bank Trust Co. ("Merchants"), an equity loan for the Alabama property, obtained from AmSouth, and various credit-card debts. Willie Donald also signed a "retention agreement." After signing the applications, Jones learned that the Donalds had obtained a construction loan for a funeral home in which Willie Donald had a partnership interest.[2] Willie Donald stated that, in order to obtain the loan for the funeral home, he had given a second mortgage on the Cincinnati properties.
According to Jones, Midwest's efforts to obtain refinancing for the Donalds included contacts with several mortgage companies, but none of them would agree to issue loans both for the Cincinnati properties and for the Alabama property. Eventually however, Jones was able to locate one company that would finance a loan for the Alabama property and another company that would finance a loan for the two Cincinnati properties. As a result, two separate closings were scheduled. When the first closing occurred on October 25, 1996, both Willie and Gladys Donald signed two new residential loan applications and two settlement statements for the Cincinnati properties. Because the funds disbursed did not repay in full the original loans made by Merchants, the Donalds had to obtain a temporary loan from Merchants to pay the difference. According to the Donalds, they pledged Gladys Donald's Procter Gamble ("PG") stock in order to obtain additional funds to pay off the temporary loan from Merchants. When the second closing occurred in November 1996, Willie and Gladys Donald signed a settlement statement and obtained the refinancing for the Alabama property. Following the second closing, the three refinanced loans were consolidated, but the Donalds' credit-card debts were not paid.
In their suit against Midwest and Jones, the Donalds asserted claims for fraud, negligent misrepresentation, and breach of contract in connection with the refinancing plan. Specifically, they alleged that Midwest and Jones had perpetrated a fraud by falsely representing that the credit-card debts would be paid under the refinancing plan; that, if there was no fraud, there was what amounted to a negligent misrepresentation; and that the failure to discharge the credit-card debts was itself a breach of contract.
When the trial court granted summary judgment in favor of Midwest and Jones, it held that, even when the evidence was viewed in the light most favorable to the Donalds, there was insufficient proof to support their allegations. The court further determined that the parole evidence rule prohibited it from giving any effect to the oral promises cited by the Donalds in support of the breach-of-contract claim.
Pursuant to Civ.R. 56(C), a trial court may grant a motion for summary judgment where the moving party shows that there is no genuine issue of material fact left to be litigated; that it is entitled to judgment as a matter of law; and that it appears from the evidence that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Summary judgment may not be entered, however, if a material fact is genuinely disputed. Initially, the moving party bears the burden of providing the basis for its motion and pointing to evidentiary materials demonstrating the absence of a genuine issue of fact on a dispositive issue,[3] even if that issue would not ordinarily fall within the movant's burden of proof at trial.[4]
The moving party cannot discharge its initial burden by making unsupported assertions; rather it must specifically point to some evidence demonstrating that the nonmoving party cannot prove its claims.[5] If the moving party fails to satisfy its initial burden, a motion for summary judgment must be denied, but if the moving party has met that burden, then the nonmoving party has the reciprocal burden of specificity to demonstrate that there is a material factual issue deserving of a trial.[6] Our review of the appropriateness of summary judgment is de novo.[7]
To clarify our analysis in this case, we review individually the claims of fraud, negligent misrepresentation, and breach of contract.
In the first count of their complaint, the Donalds alleged that Jones had fraudulently represented that the credit-card debts would be paid under the refinancing plan. The elements of fraud include the following:
 (a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
 (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 (d) with the intent of misleading another into relying upon it,
 (e) justifiable reliance upon the representation or concealment, and
 (f) a resulting injury proximately caused by the reliance.[8]
Midwest and Jones attempt to defend the summary judgment entered on the fraud claim by arguing that there is no evidence of justifiable reliance or intent to mislead. With respect to the element of reliance, their position is that the Donalds could not have justifiably relied on Jones's statements because Willie Donald admitted that the amount of the financing was contingent on the appraised value of his three homes, and because the closing statements clearly indicated how the funds would be distributed.
Upon a careful review of the record, we conclude that the Donalds raised genuine issues of material fact with respect to justifiable reliance and intent. In both his deposition and his affidavit, Willie Donald stated that the purpose of refinancing and consolidating the residential loans was primarily to pay off the Donalds' credit-card debts. Willie Donald also stated that Jones had assured him, both at the meeting on July 1 and after the first closing on October 25, 1996, that the credit-card debts would be paid after the consolidation process was completed. In particular, Willie Donald declared in his affidavit that Jones and his assistant, Debbie Handley, had "assured [him] that, after the Alabama property closing, the credit card debt would be paid off." Further, Gladys Donald stated in an affidavit that the refinancing was supposed to pay the credit-card debts. Although the testimony of Jones and Handley arguably contradicts the Donalds' testimony with respect to whether and to what extent Jones made representations to the Donalds concerning their credit-card debts, what was intended by any representations, and whether the Donalds justifiably relied on any representations, these disparities are genuine issues of material fact that must be litigated.
Jones and Midwest also defend the summary judgment by arguing that there is no evidence in the record relating to causation and damages. During the proceedings below, the trial court stated that the Donalds had failed to establish that the refinancing plan had caused their alleged bankruptcy, or that, even if it did cause the bankruptcy, any damage had resulted. After reviewing the record in the light most favorable to the Donalds, we conclude that they raised genuine issues of material fact with respect to causation and damages. The Donalds presented evidence by deposition and affidavit that the refinancing plan had caused them to file bankruptcy. Willie Donald stated specifically in his deposition and his affidavit that the couple had filed bankruptcy because of the refinanced loans. Further, Gladys Donald stated the following in her affidavit:
 [t]he refinancing caused much higher monthly payments for [her family] and, with the credit card debt and [the] loan payments to Proctor Gamble, [her] family fell further into financial distress, and [they] had to file bankruptcy.
Although Midwest and Jones argue that the bankruptcy may actually have been caused by other factors, this is an issue of fact that must be resolved at trial.
In sum, we conclude that sufficient evidence was presented below to establish that Jones made an affirmative representation about payment of the credit-card debts; that the Donalds entered into a refinancing plan with Midwest based on that representation; that the credit-card debts were not paid; and that the Donalds filed bankruptcy due to the refinancing plan. In view of this, the trial court erred in granting summary judgment on the fraud claim.
In the second count of their complaint, the Donalds alleged negligent misrepresentation. Negligent misrepresentation is defined in these terms:
 [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[9]
Midwest and Jones argue that summary judgment on this claim was proper because the Donalds failed to establish the appropriate standard of care and whether there was a duty owed to them under the circumstances. Essentially, they submit that, in order to prevail on their claim of negligent misrepresentation, the Donalds had to present expert testimony establishing a standard of care in the mortgage industry.
David A. Lipsky, a general manager of First Capital Bancorp, was deposed. In his deposition testimony, Lipsky stated that he had over ten years of experience in the mortgage industry. A report issued by Lipsky was admitted as an exhibit. In the report, Lipsky stated that, in his opinion, "the behavior of Midwest National Mortgage Banc, Inc. and Wayne Jones [did] not come close to the minimum standards of behavior for mortgage brokers." In his deposition testimony, Lipsky, however, explained that there were no state regulations governing the licensing or behavior of mortgage brokers. Although Lipsky's deposition testimony arguably contradicted the opinions given in his report, the report provided sufficient evidence to defeat summary judgment on the negligent-misrepresentation claim. The credibility of Lipsky's testimony was a factual issue that could not be resolved as a matter of law. Accordingly, we conclude that the Donalds raised a genuine issue of material fact as to whether Jones exercised reasonable care in making the alleged misrepresentation.
Midwest and Jones also argue that there is no evidence in the record that Jones made an affirmative statement or that Willie or Gladys Donald justifiably relied on the statement. But, as we have already stated, the Donalds presented sufficient evidence to show that Jones made an affirmative statement to them about payment of their credit-card debts, and that they acted in reliance on the representation. Further, whether the Donalds were justified in relying on Jones's alleged representation presented a question of fact that could not be resolved by summary judgment. Accordingly, we conclude that the trial court erred in granting summary judgment on the claim of negligent misrepresentation.
The final issue presented for review is whether the parole evidence rule was properly invoked to bar recovery on the breach-of-contract claim. The complaint stated the following with respect to that claim:
 [b]y making the above-described representations and commitments to the Plaintiffs, the Defendants entered into a contract with the Plaintiffs to effect the elimination of the Plaintiffs' credit card debt through a series of refinancing.
A contract is defined as a promise, or set of promises, actionable upon breach. For a valid contract to exist, there must be an offer on one side, an acceptance on the other side, and mutual assent between the parties with regard to the consideration for the bargain.[10]
Initially, we note that the arguments made by the Donalds fail to indicate the terms of the purported contract between them and Midwest. It appears, however, that the Donalds are arguing that an oral contract guaranteeing the payment of the credit-card debts was formed after Willie Donald and Jones, acting on behalf of Midwest, signed the retention agreement. The retention agreement at issue here pertained only to the loan for the Trimble Avenue property; therefore, any application of the parole evidence rule would only relate to statements surrounding that property. Be that as it may, after reviewing the record de novo, we conclude that there is no evidence relating to an offer, acceptance, and consideration amounting to an oral contract to pay the credit-card debts. As a result, we conclude that the trial court did not err in granting summary judgment to Midwest and Jones on the breach-of-contract claim.
In sum, we conclude the trial court erred in granting summary judgment to Midwest and Jones on the fraud and negligent-misrepresentation claims. But the court did not err in granting summary judgment to Midwest and Jones on the breach-of-contract claim. Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and this case is remanded to the trial court for further proceedings consistent with this Decision.
________________________ Per Curiam
Doan, P.J., Painter and Sundermann, JJ.
[1] Jones testified that he no longer works for Midwest.
[2] The construction loan was originally obtained from Patriot Federal Savings Bank, but when Merchants bought Patriot, it assumed the commercial loan.
[3] See Dresher v. Burt (1996), 75 Ohio St.3d 280,294, 662 N.E.2d 264, 274.
[4] See id.; Vahila v. Hall (1997),77 Ohio St.3d 421, 428, 674 N.E.2d 1164,1170.
[5] See Dresher v. Burt, supra; Vahilla v. Hall, supra.
[6] Civ.R. 56(E). See Dresher v. Burt, supra,
at 295, 662 N.E.2d at 275; Vahila v. Hall, supra, at 429,674 N.E.2d at 1170-1171.
[7] See Morehead v. Conley (1991), 75 Ohio App.3d 409,411, 599 N.E.2d 786, 788.
[8] Burr v. Board of County Commrs. (1986), 23 Ohio St.3d 69,491 N.E.2d 1101, paragraph two of the syllabus.
[9] Delman v. Cleveland Heights (1989), 41 Ohio St.3d 1,4, 534 N.E.2d 835, 838, quoting Restatement of the Law 2d, Torts (1965), 126-127, Section 552(1).
[10] See Noroski v. Fallet (1982), 2 Ohio St.3d 77,79, 442 N.E.2d 1302, 1304.