{¶ 23} Respectfully, I dissent because there is no evidence the parties in this case ever agreed on how the $56,478.56 was to be paid. Even though the settlement agreement encompasses all litigation between the parties and therefore would include the $56,478.56 Willard describes as settlement monies for tort claims. The agreement, however, does not reference tort claims and is silent on how such claims, if included, are to be paid to Willard. As the Supreme Court of Ohio has said: "The result of a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and an acceptance thereof.Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79, 2 Ohio B. Rep. 632, 633,442 N.E.2d 1302, 1304. To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear. `A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being understood. * * * Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.'" 1 Corbin on Contracts (Rev.Ed. 1993) 525, Section 4.1. (Footnote omitted.)
 {¶ 24} "* * *
 {¶ 25} "We observe that courts should be particularly reluctant to enforce ambiguous or incomplete contracts that aim to memorialize a settlement agreement between adversarial litigants. * * * [J]udges should make certain the terms of the agreement are clear, and that the parties agree on the meaning of those terms." Rulli v. Fan Co. (1997),79 Ohio St.3d 374, 376-377, 1997-Ohio-380, 683 N.E.2d 337.
 {¶ 26} "[I]f a term cannot be determined from the four corners of a contract, a factual determination of intent or reasonableness may be necessary to supply the missing term." Inland Refuse Transfer Co. V.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322;474 N.E.2d 271. When a contract is missing an essential term, parol evidence is admissible so that the court may construe an ambiguous or missing term. Id. Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635,638; 597 N.E.2d 499.
 {¶ 27} In the case at bar, the only issue for this court to decide is whether the settlement agreement states that Willard agreed to submit a payment request form to be forwarded to the funding agencies for the $56,478.56, an amount which Willard says is for tort claims, not for construction work. The city disputes that any part of the settlement funds were related to tort claims.
 {¶ 28} It is undisputed that the agreement says that it is meant to settle all claims between the parties, including "certain litigation in the Cuyahoga County Court of Common Pleas styled Victory White MetalCompany vs Willard Construction Company, et al. The same being Case No. 330360 and Willard Construction Company vs City of Olmsted Falls, Ohio, the same being Case No. 336387 * * *." The parties also agree the agreement is unambiguous about how Willard would be paid for construction work performed. They disagree, however, on whether the agreement encompasses the tort claims Willard says it could not submit a payment request form for because to do so would have been false. The city argues that any reference to tort claims falls outside the four corners of the agreement and is thus barred by the parol evidence rule.
 {¶ 29} Below, the city made the same parol evidence argument without noting that it and Willard submitted extrinsic evidence to their summary judgment motions. I have no reason to believe the court did not consider these materials before reaching its decision.
 {¶ 30} Attached to Willard's motion for summary judgment is the affidavit of William Kahelin, bond counsel for Ohio Farmer's Insurance and one of the signators on the settlement agreement. In that affidavit, Kahelin avers that he was involved in the settlement negotiations with Willard and the city. He states "that some part of the settlement proceeds were intended for the various extra-contractual damage claims
Willard asserted in the lawsuits." ¶ 6. (Emphasis added.)
 {¶ 31} When the city moved for summary judgment, it too attached an affidavit. Dan Patrick III, the city's Director of Finance, averred that city and Willard entered into the settlement agreement in order "to resolve disputes that arose between the parties pursuant to the Contract that were the subject of litigation pending in the Cuyahoga County Court of Common Pleas[.]" The city's affidavit never denies Kahelin's statement that the agreement settled "extra-contractual damage claims."
 {¶ 32} The city argues that because the agreement does not mention any "tort" claims they are, therefore, not included. It is well-settled that the term "ex contractu" can encompass tort claims. See Portale v.Berkshire Condominium Owners Assoc. (Oct. 13, 1994), Cuyahoga App. No. 66793.
 {¶ 33} The term "extra-contractual" is ambiguous leaving reasonable minds to differ about two questions: first, whether the two common pleas court cases referenced in the settlement agreement included tort claims; second, whether tort claims were part of either or both of the lower court cases and whether Kahelin is including those tort claims when he uses the term "extra-contractual." Neither of these questions can be resolved on summary judgment. Further, because Kahelin's reference to extra-contractual damages can be construed to mean torts, the parol evidence rule is not violated when extrinsic evidence is used to explain the meaning of terms in the agreement, not to contradict what is otherwise unambiguous. Willaims v. Williams (July 12, 2001), Cuyahoga App. No. 78193.
 {¶ 34} Other paragraphs, moreover, add to the ambiguity of the agreement. Those paragraphs require Willard to submit "payment requests in the form prescribed by the City Engineer which the City shall promptlyprocess and submit to the various agencies of the State of Ohio who haveprovided funding for the project." ¶ 2, emphasis added. The language here expressly specifies that the forms will be submitted, in turn, to the State of Ohio. Further, the agreement states that Willard agrees to accept final payment "from the City under the Contract for work performed by Willard with respect to the Project." ¶ 5. The language of paragraph five limits payment to "work performed."
 {¶ 35} Although the Agreement states it is settling the two court cases, the agreement makes no specific reference to "extra-contractual damage claims" or to tort claims on the $56,478.56 owed. On the contrary, when payment request forms are discussed in the agreement, they are described as intended as a basis for reimbursement from a state agency. The agreement is silent as to what form is to be used to request payment for anything not eligible for reimbursement. The majority bases its interpretation of the contract almost solely on the clause "provided that Willard completes the necessary payment requests * * *." The majority, however, has omitted a significant phrase that immediately followed this clause: "for forwarding to the State agencies funding the Contract and Project." Having ignored this plain restriction, the majority then assumes payment requests are necessary for all payments. However, if there is no payment request form relating to claims that should not be forwarded to the state for funding (such as "extra-contractual damage claims" or tort claims), then it cannot be assumed that a payment request form is necessary for such claims.
 {¶ 36} Beyond mere reference to the two lawsuits, the agreement is silent on the nature of the claims in those matters or what the parties intended if payment had to be made to Willard for claims outside its construction work on the project. Further, I cannot ignore Willard's assertion that submitting a payment request form for tort claims would have required Willard to falsely imply the claims could then be reimbursed by a state-funding agency which reimburses only for work performed on the construction contract. If Willard is correct and tort claims were part of the two suits, then I agree that it could not, legally, request the funding agencies to pay for cush claims. In light of these observations, I conclude that the circumstances surrounding the agreement give its plain language a special meaning which cannot be ascertained without resort to further evidence.
 {¶ 37} A cursory look at the form prescribed shows that it is to be approved by the City Engineer, not the law department. Does a city engineer approve payment for settlement of court claims? I think not. The rest of the form clearly demonstrates that it is to be used for estimating construction costs, as the word "estimate" indicates. A precise amount agreed to in a settlement for damages in a court action is not an "estimate." The form itself, together with paragraphs two, five, and all of nine, substantially call into question the majority's reading of the agreement.
 {¶ 38} In every instance when the contract refers to payment requests or payment the phrase is clearly restricted by a reference to funding authorities or work performed. The restrictions are so clear that I must conclude that the contract unambiguously does not require Willard to submit payment request forms for monies owed by the city to settle tort claims. At the very least, the meaning of the agreement is missing language about claims other than those related to construction work. The agreement therefore is missing essential terms which cannot be gleaned from the document's unambiguous language. A "factual determination of intent or reasonableness may be necessary to supply the missing term."Inland Refuse, supra, at 321; Gasel Transportation Lines, Inc. V. GeneralSecurity Insurance Co., Washington App. No. 00CA30, 2001-Ohio-2442; LakeCounty Board of Commissioners v. Consumers Ohio Water Company (Dec. 22, 2000), Lake App. No. 99-L-092.
 {¶ 39} Under Rulli, supra: "Where parties dispute the meaning or existence of a settlement agreement, a court may not force an agreement upon the parties. To do so would be to deny the parties' right to control the litigation, and to implicitly adopt (or explicitly, as the trial court did here) the interpretation of one party, rather than enter judgment based upon a mutual agreement." Id., at 377.
 {¶ 40} Construing the language of the agreement to mean Willard had to submit payment requests for tort claims, moreover, assumes that funding agencies indemnified the city for its liabilities. Thus the majority's interpretation only raises more questions about whether the funding agencies for the project are contractually bound to pay for the city's torts and whether using public funds which the parties acknowledge were gathered for construction of the project is legal and enforceable.
 {¶ 41} Despite the City's insistence that the funding agencies would have paid Willard had it submitted a timely payment request form for the $56,478.56, the record is devoid of any evidence that the agencies ever agreed to do any such thing. It is also unclear how the funding agencies could disperse any payments unless they were related to construction work Willard performed. There is nothing in the record indicating how the agency funds were earmarked. For the majority to accept the city's unilateral representation that the funding agencies would be obliged to pay for the city's torts out of the construction funds exceeds the scope of the record.
 {¶ 42} Reasonable minds viewing the evidence can come to differing conclusions as to the intent of the parties regarding these terms and the reasonableness of requiring Willard to submit a payment request form for something unrelated to work performed. There is a genuine issue of material fact about whether the written agreement embodies the meeting of the parties' minds. Accordingly, the trial court erred in granting summary judgment.
 {¶ 43} For all of the foregoing reasons, I would reverse the judgment of the trial court and remand this matter for trial.