[Cite as *Wood v. Cashelmara Condominium Unit Owner's Assn., Inc.*, 2024-Ohio-3104.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

TIMOTHY WOOD, ET AL.,　　　　　　　:

　　　　Plaintiffs-Appellees,　　　　:

　　　　　　　　　　　　　　　　　　　　　No. 113028

　　　　v.　　　　　　　　　　　　　:

CASHELMARA CONDOMINIUM
 UNIT OWNERS' ASSOCIATION,
 INC., ET AL.,　　　　　　　　　　　:

　　　　Defendants-Appellants.　　　:

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 15, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-942871

---

### *Appearances:*

Collins Roche Utley & Garner, LLC, and Patrick M. Roche, *for appellees,* Steven Kish and SK2 Properties, LLC.

Gertsburg Licata Co. LPA, Victor A. Mezacapa, III, and Maximilian A. Julian, *for appellees* Timothy Wood and Lani Wood.

Kehoe & Associates, LLC, Robert D. Kehoe, and Kevin P. Shannon, *for appellants*.

MARY J. BOYLE, J.:

**{¶ 1}** Appellant, Cashelmara Condominium Unit Owners' Association, Inc. ("the Association"), appeals the trial court's decision to grant appellees Timothy and Lani Wood's (collectively "the Woods") motion to enforce the settlement agreement and deny its motion for attorney fees. It is from this ruling that the Association now appeals raising the following assignments of error for our review:

> **Assignment of Error I:** The trial court erred when it granted Appellee's Motion to Enforce Settlement Agreement (JE dated June 27, 2023) and denied Defendant's Motion to Correct Judgement Entry (July 27, 2023).

> **Assignment of Error II:** The trial court erred when it denied Appellant's Motion for Attorneys' Fees and Expenses.

**{¶ 2}** For the reasons set forth below, we affirm.

## I. Facts and Procedural History

**{¶ 3}** This lawsuit is one of several arising out of the renovation of unit 27 at Cashelmara Condominiums by appellees SK2, LLC, and Stephen M. Kish (collectively, "Kish"), which caused issues with the Woods' unit 31 that is located directly above unit 27. We will limit our factual and procedural review to matters pertinent to this appeal.

**{¶ 4}** On January 13, 2021, the Woods filed their verified complaint for declaratory judgment and injunctive relief alleging breach of fiduciary duty, breach

of contract, and negligence against the Association.[1]  The Association filed its answer along with a counterclaim against the Woods and a third-party complaint for indemnification and contribution against Kish.  In June 2021, the trial court entered summary judgment in favor of the Association on all claims and counterclaims between the Woods and the Association.  The Woods appealed to this court, which reversed the trial court in part, affirmed in part, and remanded finding that a genuine issue of material fact remained regarding the timeliness and effectiveness of the Association's remediation efforts.  *See Wood v. Cashelmara Condominium Unit Owners Assn.*, 2022-Ohio-1496, ¶ 61 (8th Dist.).  The case was returned to the trial court's active docket in June 2022.

{¶ 5}  On October 19, 2022, due to the trial court's unavailability, the parties were referred to a visiting judge for trial.  The visiting judge facilitated a discussion between the parties, and they reached a settlement agreement that same day.  Their agreement was placed on the record in chambers (hereafter "Oral Agreement"), the agreement stated, in pertinent part:

> THE COURT:  We got a settlement here.  [Attorney for Kish], give us your lowdown, what you were talking about on the record.
>
> [Attorney for Kish]:  This is [Attorney for Kish] for the third-party defendant Steve Kish, SK2 Properties.
>
> The recitation of the settlement is as follows: Third party defendants will pay a total of $10,750.  Cashelmara Insurance carrier will pay a total of $21,000.  That is a total settlement amount of $31,750.

---

[1] This case was previously filed on August 5, 2020, and dismissed by the trial court for failure to prosecute.  *See Wood v. Cashelmara Condominium Unit Owners Assn.*, Cuyahoga C.P. No. CV-20-935640 (Dec. 7, 2020).

Out of that total settlement amount, $15,250 will be paid to the Woods, and $16, 500 will be paid to the Cashelmara board.

A condition of the settlement is also that Unit 27 will be remodeled or renovated either by SK2 Properties [i.e., Steve Kish's entity] or a subsequent owner of Unit 27, in the event the unit is sold. If it is done by SK2 properties and/or Steve Kish, that is subject to the plans for renovation being approved by both the board and by the City of Bay Village.

All claims, counterclaims, third-party claims of all parties will be settled and dismissed with prejudice. Court costs to borne by each . . .

THE COURT: Each party will pay their own costs.

. . .

[Attorney for Kish]: I should say the timing of the renovation to Unit 27 is contingent on it being approved. Obviously, my clients can't do anything until the board approves a drawing and the City approves a drawing.

[Attorney for the Association]: Correct.

. . .

[Attorney for Plaintiff's]: Timing of the payment? Today is the 19th.

[Attorney for Kish]: We'll have to put together a formal settlement agreement on payments to be made within 14 days after that settlement agreement is approved by all parties.

[Attorney for the Association]: My insurance carrier needs the signatures on those before we can get it distributed. I'm going to have to have the signature on it. Can it be done a week after signatures?

[Attorney for Kish]: Well, I think 30 days, rather than fooling around. We're going to ask for a check now, we're going to need a W-9, and what we have sitting at our office, I don't have a problem with that. But we need the release signed. There will be a global release to be executed by a representative of Cashelmara, Steve Kish, because part of his consideration is a potential remodel, and Mr. and Mrs. Woods [sic].

[Attorney for the Association]: And SK2, do they have to sign off, too?

[Attorney for Kish]: An authorized representative of SK2 will sign.

. . .

[Attorney for the Association]: Just a point of edification. [Attorney for Kish], you said a remodel of the unit. You were talking about the ceiling — are we talking about two different things? . . . .

[Attorney for Kish]: I'm talking about installing a drop ceiling.

[Attorney for the Association]: So when you said the word, "remodel," not the entire unit? I mean, it will be, and my assumption when the complete remodel is done the drop ceiling will also be installed. But to be perfectly clear on the record, whether Steve Kish does the remodel or someone new, it would be a requirement that the drop ceiling be re-installed.

[Attorney for Kish]: Agreed. Agreed. I believe we're on the same page with that term.

(Tr. 3-8 attached to Journal Entry, June 27, 2023).

**{¶ 6}** All parties agreed — on the record — to the terms of the settlement and agreed to enter a final, signed, written settlement agreement and release memorializing their understanding of the Oral Agreement. Multiple attempts were made by the parties to reduce the agreement to writing, including two additional settlement conferences with the judge in January and February 2023.

**{¶ 7}** On April 6, 2023, the Woods moved the trial court to enforce the settlement agreement and award attorney fees. Attached to their motion was a written proposal ("written proposal"), the transcript of the Oral Agreement, and numerous emails exchanged between the parties. The written proposal was signed only by the Woods. The Association and Kish filed briefs in opposition arguing that the Woods' written proposal contained terms not agreed to in the Oral Agreement,

as well as cross-motions to enforce the settlement agreement attaching an earlier proposed agreement, or, in the alternative, they asked the court to enforce the Oral Agreement. The Woods opposed the Association's and Kish's cross-motions asserting that their written proposal contained terms not agreed to in the Oral Agreement.

{¶ 8} A hearing on the motions was set for June 21, 2023. No hearing was held; however, the trial court discussed its ruling during a conference with all counsel in chambers. On June 27, 2023, the trial court granted the Woods' motion to enforce settlement and ordered the parties to pay their own costs. The entry stated:

> Plaintiff's Motion to Enforce Settlement Agreement is Granted pursuant to *Noroski* [*v. Fallet*], 2 Ohio St.3d 77 [1982] and *Spercel* [*v. Sterling Industries, Inc.,*]. 31 Ohio St.2d 36 [1972](See record attached). Parties to pay their own attorney fees. So Ordered.

(Journal Entry, June 27, 2023). The court referenced and attached the transcript of the Oral Agreement reached by the parties on October 19, 2022. Nothing else was attached.[2]

---

[2] The Association had filed a motion to correct judgment entry arguing that the trial court granted the Association's motion because the trial court was enforcing the Oral Agreement, and the Association was the party who requested that the Oral Agreement be enforced. This motion was denied by the trial court the same day the appeal was filed. That entry was made part of the record on appeal but not part of the notice of appeal.

## II. Law and Analysis

### A. Motion to Enforce the Settlement Agreement

{¶ 9} In the first assignment of error, the Association asserts that by adopting the transcript as the agreement, the trial court, in essence, granted the Association's motion to enforce settlement agreement and not the Woods' motion, claiming the Woods never moved the court to enforce the Oral Agreement. The Association further argues that the written proposal attached to the Woods' motion contains several additional terms that were not discussed or agreed upon by the parties and modified material terms of the Oral Agreement. Kish agrees with the Association but argues that this court should send the case back to the trial court for clarification. The Woods argue that the trial court properly granted their motion to enforce settlement and since it included their written proposal, the court intended to enforce the Woods' written proposal.

{¶ 10} The crux of the issue before this court is what did the trial court intend when it granted the Woods' motion to enforce settlement, attaching the transcript of the Oral Agreement, but ordering the parties to pay their own attorney fees. It is long accepted that a court speaks through its journal entries. *Dickerson v. Cleveland Metro. Hous. Auth.*, 2011-Ohio-6437, ¶ 13 (8th Dist.), citing *State v. Brooke,* 2007-Ohio-1533, ¶ 47. And journal entries must be construed, as any other written instrument, by giving the language of the journal entry its ordinary meaning. *Lurz v. Lurz*, 2010-Ohio-910, ¶ 17 (8th Dist.), citing *Sauerwein v. Sauerwein*, 1996 Ohio App. LEXIS 269 (6th Dist. Feb. 2, 1996). An ambiguous

journal entry requires interpretation. *Id.* "A [journal entry] is ambiguous if its terms cannot be clearly determined from a reading of the entire [entry] or if its terms are susceptible to more than one reasonable interpretation." *Militiev v. McGee*, 2010-Ohio-6481, ¶ 30 (8th Dist.), citing *United States Fid. & Guar Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45 (2d Dist. 1998). An appellate court should examine the entire record to discern the meaning of the judgment entry when the judgment is unclear or ambiguous. *Id.* at ¶ 17, citing *Sauerwein, supra*.

{¶ 11} The trial court's entry attached the transcript of the Oral Agreement and cited *Noroski*, 2 Ohio St.3d 77, and *Spercel*, 31 Ohio St.2d 36, as support for its decision. *Spercel* specifically rejected the notion that oral agreements must be reduced to writing to be enforceable, holding that when the parties to an action "enter into an oral agreement in the presence of the court, such agreement constitutes a binding contract." *Id.* at paragraph one of the syllabus. The Ohio Supreme Court emphasized that "'[w]here the parties to a case pending in court enter into a definite . . . oral settlement agreement, compromising the issues, and there being no denial of this agreement, it is the duty of the court to make the agreement the judgment of the court and thereby terminate the litigation.'" *Id.* at 39, quoting *Herndon v. Herndon*, 227 Ga. 781, 183 (1971). In *Noroski*, the Ohio Supreme Court acknowledged that "an oral settlement agreement requires no more formality and not greater particularity than appears in the law for the formation of a binding contract" citing *Spercel*, explaining that there must be a meeting of the

minds. *Noroski* at 79. Notably, the trial court did not reference or attach the Woods' written proposal that was attached as an exhibit to their motion.

{¶ 12} On appeal, the Association and Kish acknowledge and argue that the parties reached a settlement agreement on October 19, 2022, which was set forth on the record and contained all the essential terms of a contract. They argue that the trial court intended to enforce the Oral Agreement, not the Woods' written proposal; therefore, the trial court granted the Association's motion to enforce the settlement agreement because they asked for the Oral Agreement to be enforced. The Woods insist that when the trial court granted their motion, it encompassed their written proposal because it was attached as an exhibit to their motion.

{¶ 13} As stated previously, the Woods' motion to enforce the settlement agreement and request for attorney fees included their written proposal signed only by the Woods, the transcript of the Oral Agreement, and several emails between the parties. A review of the Woods' motion reveals that the written proposal is referred to as the "Agreement," yet throughout the Woods' motion, "Agreement" is used interchangeably (both capitalized and uncapitalized) to reference the Oral Agreement set forth on the record and the written proposal attached as an exhibit to their motion. Confusing to say the least, or strategic — we will not speculate. In addition, the Woods specifically argued in the motion that oral agreements are binding contracts between the parties when they orally agree to settle their dispute on the record in the presence of the trial court citing *Spercel,* 31 Ohio St.2d 36, at paragraph one of syllabus. Further, in the prayer for relief, the Woods state that

"because the parties entered into a binding settlement agreement on the record, the Woods pray that the Court will GRANT the instant Motion and (1) enforce the parties' Agreement, [and] (2) award Plaintiff's attorneys' fees[.]"  Finally, the Woods acknowledged several times, in the motion and on appeal, that the parties reached a settlement agreement on October 19, 2022, and that agreement was set forth on the record.  Therefore, we conclude that the Woods also requested that the Oral Agreement be enforced; they simply want their rendition of the Oral Agreement as set forth in their written proposal.  In essence, they want their cake, and they want to eat it too.  However, the trial court did not adopt their written proposal.

{¶ 14} Accordingly, after reviewing the entire record and because the trial court cited *Noroski*, *supra*, and *Spercel*, *supra*, and attached the transcript of the Oral Agreement and none of the written proposals, this court finds that the trial court intended to enforce the Oral Agreement only.  Notably, when the trial court ordered that the parties pay their own attorney fees, the court, in essence, denied the Woods' motion in part.  This also supports our conclusion that the trial court did not grant the Woods' motion in its entirety.  Although the trial court granted the Woods' motion in part, each party benefited from that judgment to the extent that they all requested that the trial court enforce the Oral Agreement.  Further, all parties agree that there was a valid settlement agreement reached on October 19, 2022; therefore, we cannot say that the trial court erred when it granted the Woods' motion.

**{¶ 15}** Accordingly, the first assignment of error is overruled.

## B. Motion for Attorney Fee s

**{¶ 16}** In light of our ruling in the first assignment of error, the second assignment of error is rendered moot.

**{¶ 17}** Accordingly, the second assignment of error is overruled.

## III. Conclusion

**{¶ 18}** Because the trial court attached the transcript of the Oral Agreement to its journal entry, we find that the trial court intended to enforce the Oral Agreement only. Further, the trial court did not err in granting the Woods' motion to enforce the settlement agreement.

**{¶ 19}** Accordingly, the judgment is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
ANITA LASTER MAYS, J., CONCUR