[Cite as *M3 Producing, Inc. v. Tuggle*, 2017-Ohio-9123.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| M3PRODUCING, INC., ET AL | : | Hon. W Scott Gwin, P.J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiffs-Appellees | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2017CA00036 |
| MELISSA TUGGLE, ET AL | : |  |
|  | : |  |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of
                             Common Pleas, Case No.2015CV01678


JUDGMENT:                    Reversed and Remanded


DATE OF JUDGMENT ENTRY:      December 19, 2017


APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

JAMES H. MCHUGH                        SCOTT M. ZURAKOWSKI
Tzangas, Plakas, Mannos, Ltd           JAMES M. WILLIAMS
220 Market Avenue South, 8th Floor     Krugliak, Wilkins, Griffiths
Canton, Ohio 44702                     & Dougherty Co., L.P.A.
                                       4775 Munson Street, N.W.
                                       P.O. Box 36963
                                       Canton, Ohio 44735-6963

*Baldwin, J.*

**{¶1}** Appellants Melissa Tuggle and SSS Oil and Gas, Inc. appeal the February 8, 2017 judgment entry of the Stark County Court of Common Pleas granting in part and denying in part their motion to enforce settlement agreement.

*Facts & Procedural History*

**{¶2}** KMFAD Oil and Gas, LLC ("KMFAD"), an oil and gas production company, was bequeathed to appellant Melissa Tuggle ("Tuggle") and her sister Carrie Anne Moore ("Moore") when their father died. Each sister's company was a 50% owner of KMFAD. Moore's company is appellee M3 Producing, Inc. ("M3") and Tuggle's company is appellant SSS Oil and Gas. The parties were unable to operate KMFAD cooperatively and continually disagreed about the management and running of KMFAD. Thus, on August 13, 2015, appellees filed a complaint against appellants for breach of fiduciary duty, accounting, unjust enrichment, and injunctive relief. Appellants filed an answer to the complaint. The parties then engaged in extensive motion practice and mediation, and ultimately arrived at a settlement. The parties reduced the settlement terms to writing and filed a consent entry of dismissal with prejudice on October 18, 2016. The trial court retained jurisdiction to enforce the terms of the settlement agreement.

**{¶3}** The settlement agreement generally provides that appellants would relinquish their interest in KMFAD in exchange for appellees transferring certain wells owned by KMFAD, the NATCO and Medina wells, to appellants. Section 2.01 of the settlement agreement states that the purchase and sale agreement of the NATCO and Medina wells, shall be held in abeyance and not take effect until such time as the SSS Oil Parties, at the sole expense of the SSS Oil Parties, secure any and all permits and licensure as required by the State of Ohio, including, but not limited to the State of Ohio

Department of Natural Resources ("ODNR"), and until such time as the SSS Oil Parties, at the sole expense of the SSS Parties, secure the industry security and bonding on all assets contained in the Purchase and Sale Agreement as further required by ODNR; however, said period of abeyance shall be no later than November 30, 2016 (the "Transition Period").  The KMFAD Parties shall timely tender any and all information or documentation as requested by the SSS Oil Parties for purposes of obtaining said required permits, licensure and industry security, provided said information and/or documentation is in the possession of the KMFAD Parties

{¶4}   Further, Section 2.09 of the settlement agreement provides that if the SSS Oil Parties failed to secure any and all permits and licensure as required by the State of Ohio, including, but not limited to ODNR, and/or in the event that the SSS Oil Parties fail to secure the required industry security on all assets contained in the Purchase and Sale Agreement, as required by §2.01 above, by the last date of the Transition Period, the Purchase and Sale agreement shall then become null and void on December 1, 2016, and KMFAD shall retain and maintain any and all interest in the NATCO/Crescent Brick Lease wells and the Homer Township/Medina County gas wells (and all well equipment).

{¶5}   On November 1, 2016, counsel for appellants sent an e-mail to counsel for appellees.  The e-mail stated that appellants had satisfied the requirement for a bond and liability insurance and thus counsel believed "this satisfies the conditions precedent in order to execute the Purchase and Sale Agreement in order to formally transfer the wells." The e-mail also included several steps appellants' counsel believed were necessary to transfer the wells, including:

1. Finalize the Purchase and Sale Agreement – see latest version attached (please note that it remains subject to further changes, review and approval by my client);

2. Your client needs to sign the necessary Form 7's; and

3. My client needs to finalize and sign ODNR Form 9.

**{¶6}** The e-mail further stated, "there is no reason this transaction cannot be closed on or before November 11th" and concluded by asking counsel for appellees to respond with his availability on November 11th. The e-mail included a redlined Purchase and Sale Agreement as an attachment. Counsel for appellees responded to the e-mail to inquire about the status of $24,385.20 in certified funds, but did not respond to the remainder of the e-mail.

**{¶7}** On November 14, 2016, appellants filed a motion to enforce settlement agreement. Appellants argued appellees refused to cooperate with appellants' effort to obtain the necessary documents to satisfy the conditions precedent pursuant to Section 2.01 and that appellees failed to cooperate with the payment of all revenues due appellants from the subject wells. Appellants also contended appellees had damaged their well operator's property and any amount due should be reduced to reimburse them for that expense. Appellees filed their own motion to enforce, arguing the trial court should not allow the transfer of the wells because the conditions precedent of Section 2.01 were not met by November 30, 2016, thus rendering the Purchase and Sale Agreement null and void. Appellees also argued appellants breached Section 1.03 by failing to pay appellees $24,385.02. The $24,385.20 amount represented one-half of the debt of KMFAD.

{¶8} The trial court held an evidentiary hearing on the motions on December 29, 2016 and then issued a judgment entry on February 8, 2017, granting in part and denying in part both motions to enforce settlement agreement. The trial court: ordered appellees to remit the net operating proceeds from the oil produced in November of 2016 from the NATCO and Medina wells to appellants; found KMFAD shall retain and maintain any and all interest in the NATCO wells; and ordered appellants to return three motors removed from the NATCO wells. The trial court stated appellees did not fail to timely tender any information or documentation necessary to obtain the ODNR licenses or permits and, thus, the NATCO and Medina wells remained with appellees pursuant to Section 2.09 of the settlement agreement. The trial court also ordered appellants to pay appellees $24,385.20, plus interest, from December 1, 2016.

{¶9} Appellants appeal from the February 8, 2017 judgment entry of the Stark County Court of Common Pleas and assign the following as error:

{¶10} "I. THE TRIAL COURT ERRED IN DENYING IN PART APPELLANTS' MOTION TO ENFORCE SETTLEMENT."

I.

{¶11} The standard of review to be applied to a ruling on a motion to enforce settlement agreement depends primarily on the question presented. If the question is an evidentiary one, this Court will not overturn the trial court's finding if there was sufficient evidence to support such finding. *M&G Automotive Serv., Inc. v. Bouscher,* 5th Dist. Tuscarawas No. 2014 AP 03 009, 2014-Ohio-5370, citing *Chirchiglia v. Ohio Bur. of Workers' Comp.,* 138 Ohio App.3d 676, 742 N.E.2d 180 (7th Dist. 2000). If the dispute is a question of law, an appellate court must review the decision de novo to determine

whether the trial court's decision is based upon an erroneous standard or a misconstruction of the law. *Id.*, citing *Continental West Condominium Unit Owners Assn v. Howard E. Ferguson, Inc.,* 74 Ohio St.3d 501, 660 N.E.2d 431 (1996).

{¶12} Settlement agreements are contractual in nature and, as such, basic principles of contract law apply. *Rulli v. Fan Co.,* 79 Ohio St.3d 374, 683 N.E.2d 337 (1997). It is a fundamental principle in contract construction that contracts should be "interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974). However, a party cannot avoid liability under a contract if that person has done some act which prevents the carrying out of the contract according to its terms. *Long v. Commodore Bank*, 5th Dist. Perry No. 01-CA-14, 2002-Ohio-252.

{¶13} The parties in this case do not dispute that a valid, enforceable settlement agreement was executed. However, the parties disagree as to the interpretation of the settlement agreement and the condition precedent and its application to the undisputed facts. Accordingly, the application of the law to the facts is at issue and thus we will conduct a de novo review.

{¶14} A condition precedent is a condition that must be performed before the obligations in the contract become effective. *Kern v. Clear Creek Oil Co.,* 149 Ohio App.3d 560, 778 N.E.2d 115 (5th Dist. 2002), citing *Troha v. Troha*, 105 Ohio App.3d 327, 663 N.E.2d 1319 (2nd Dist. 1995). Essentially, a condition precedent requires that an act "must take place before a duty of performance of a promise arises. If the condition is not fulfilled, the parties are excused from performing." *Id*. Whether a provision of a contract is a condition precedent is a question of the parties' intent. *Id*. Intent is ascertained by

considering not only the language of the particular provision but also the language of the entire agreement and its subject matter. *Id.*

{¶15} The provisions of the settlement agreement at issue are Sections 2.01 and 2.09. The question at issue is whether appellants secured the permits, licenses, industry security, and bonding by November 30, 2016 and, if not, whether the failure to secure these items was prevented by the failure of appellees to timely tender information or documentation in their possession for purposes of obtaining the permits, licensure, or industry security.

{¶16} The parties agree that, pursuant to the settlement agreement and in order to secure a permit or license from the ODNR, appellants had to post bond and obtain liability insurance. We find both of these conditions precedent were met. In the e-mail from appellants' counsel to appellees' counsel on November 1, 2016, it states appellants had secured the money for the bond, which was being held in the attorney's trust account. Further, the e-mail states appellants had secured insurance.

{¶17} The testimony also supports the conclusion that appellants had secured liability insurance and secured the money for the bond. Moore testified she was aware appellants had secured the money necessary to pay for the bond as she stated, "I had been told, yes, that she had the money." Tuggle testified she obtained liability insurance in June of 2016 and obtained enough money for the bond at the end of October and deposited the money into her attorney's trust account.

{¶18} The parties disagree as to what other documentation is necessary to obtain a permit or license from the ODNR. Appellants argue both Form 9 and Form 7 must be filed to get a license or permit from the ODNR and that Form 9 did not have to be filled

out and filed prior to appellees filling out their portion of the Form 7.  Appellees contend they could not fill out and sign their portion of Form 7 without appellants first filling out and filing the Form 9 and thus any responsibility on their part to fill out their portion of Form 7 was not triggered because appellants had not yet filled out and filed the Form 9.

{¶19}  The parties' testimony highlights the confusion as to what documents were necessary to obtain a permit or license from the ODNR and whether Form 9 had to be filed prior to Form 7.   Moore testified she knew her signature was required on Form 7; however, Moore maintained she needed the new owner number to complete her portion of the Form 7 and this new owner number could only be obtained by appellants' completion of the Form 9.  Tuggle testified Form 7 requires the signature of both herself and Moore, she could not file the Form 7 without Moore's signature, and she knew she had to file a Form 9 to obtain a new owner number in order to fill out her portion of the Form 7.   However, when asked whether SSS Oil was required to have a new owner number prior to Moore signing the Form 7, Tuggle testified, "I don't know about that." Tuggle also stated it made no sense for her to fill out the Form 9 and pay the necessary money without the Form 7.

{¶20}  Given the conflicting testimony of the parties and the lack of instruction in the ODNR forms at issue of how to specifically obtain a permit or license, we find the most persuasive evidence comes from the form entitled "Requirements to Obtain an Owner Number."   The form lists the registration requirements for new non-domestic owners as Form 9, a bond, and liability insurance.  At the bottom of the form, it states, "IMPORTANT NOTE:  In order for a well(s) to be placed under a new owner number, the Division of Oil and Gas Resources Management must receive and approve a "Request

for Change of Owner Form" (Form 7 enclosed) executed by the Assignor/Transferor and Assignee/Transferee." Based upon the fact that this "Important Note" is found at the bottom of the form instructing parties on how to register and the note specifically states Form 7 must be "approved" by ODNR, the form indicates that, to complete the permit or licensure process, Form 7 had to be submitted to ODNR.

{¶21} Further, upon our review of Form 7, we find appellees could have filled out their portion of the form without the new owner number and prior to the filing of the Form 9, as the portion of Form 7 to be filled out by appellees asks for KMFAD's owner number. The portion of the form to be filled out by appellants asks for the new owner number. There is no indication in the instructions by the ODNR that appellees could not fill out their portion of the Form 7 prior to the filing of the Form 9. If appellees had filled out their portion of the Form 7 and provided it to appellants when requested in the November 1 e-mail or November 14 motion to enforce, it would have been incumbent upon appellants to file all the documents and have them processed by the ODNR, and any failure on their part to do so by November 30, 2016 would have triggered the section of the settlement agreement that reverted the NATCO wells to appellees. However, it appears from Moore's testimony and the e-mails submitted by appellees in their December 2, 2016 response in opposition to the motion to enforce that appellees' strategy was to do nothing until appellants filed the Form 9. During this time, appellees did not fill out their portion of the Form 7 to submit to appellants.

{¶22} While appellees also argue it was appellants' responsibility to give them the Form 7 to fill out, we find no such intent in the settlement agreement. The settlement agreement states the KMFAD parties "shall timely tender all * * * documentation as

requested by the SSS Oil Parties for purposes of obtaining said required permits * * *." Here, once appellants requested that appellees fill out their portion of the Form 7, appellees were required to tender this documentation to appellants. Appellants requested this documentation via e-mail on November 1, 2016 and via their motion to enforce filed on November 14, 2016. However, appellees did not tender their portion of Form 7 to appellants.

{¶23} Accordingly, we find that simply because appellants had not yet filed the Form 9 does not relieve appellees of the duty to fill out their portion of Form 7, given the confusion by the parties as to what documentation was necessary to secure the permit/or license by the ODNR and given the "Important Note" regarding the Form 7 listed at the bottom of the ODNR form "Requirements to Obtain an Owner Number" requiring the "approval" of Form 7. Appellants twice requested that appellees fill out their portion of Form 7, but appellees did not respond to this request.

{¶24} "Every contract, including a settlement agreement, contains an implied duty for parties to act in good faith and to deal fairly with each other." *Weckel v. Cole + Russell Architects*, 1st Dist. Hamilton No. C-110590, 2013-Ohio-2718. "This is particularly so when one party has direct influence over the satisfaction of a condition precedent." *Id.*; *Johnston v. Cochran*, 10th Dist. Franklin No. 06AP-1065, 2007-Ohio-4408. Here, appellees had direct influence over the satisfaction of the condition precedent and had to exercise good faith and diligence in providing their portion of the Form 7 to appellants when appellants requested it, especially given the lack of clarity as to when the Form 7 had to be filed with the ODNR.

{¶25} Though the trial court notes appellants were unprepared to close by November 30, 2016 because there was no finalized purchase and sale agreement, we find such was not required by the plain language of the settlement agreement. The items appellants were required to obtain by November 30, 2016 were ODNR permits/licenses, liability insurance, and bond. Further, appellants did provide appellees with their proposal for the purchase and sale agreement in the November 1, 2016 e-mail, but appellees did not respond to this portion of the e-mail. Moore testified that she had no issues with the purchase and sale agreement proposed by appellants in the November 1, 2016 e-mail. Thus, the parties had a mutually agreeable purchase and sale agreement.

{¶26} Finally, we find that the denial of the motion to enforce settlement agreement produces an inequitable result. Prior to the initiation of the lawsuit in this case, appellants and appellees each owned 50% of KMFAD. However, the parties continually disagreed about the management and running of KMFAD. In order to settle the lawsuit, appellants agreed to relinquish their interest in KMFAD in exchange for appellees' transferring certain wells owned by KMFAD to appellants. There is no dispute that appellants no longer have an interest in KMFAD, as, pursuant to the settlement agreement, appellants relinquished any interest they had in KMFAD to appellees via a unit redemption agreement. Moore testified SSS Oil relinquished its interest in KMFAD via a unit redemption agreement pursuant to the terms of the settlement agreement. Due to the denial of the motion to enforce settlement, appellees received a windfall, as appellees retained all of the KMFAD wells and 100% ownership of KMFAD, despite the fact that the parties agreed to divide the wells in exchange for appellants' relinquishment of its ownership in KMFAD. Given the confusion by the parties and lack of clarity

regarding what is required to obtain a permit or license from the ODNR, we find such a result inequitable.

**{¶27}** Based on the foregoing, appellants' assignment of error is sustained. We find the trial court erred in denying the motion to enforce with respect to Section 2.01 of the settlement agreement and in finding that KMFAD shall retain and maintain any and all interest in the NATCO and Medina wells. We further find that because appellees were not relieved of their duty to fill out their portion of Form 7, the date provision (November 30, 2016) contained in Section 2.01 of the settlement agreement was frustrated and the Purchase and Sale agreement was not null and void on December 1, 2016.

**{¶28}** Accordingly, we reverse and remand the case with instructions to the trial court to effectuate the transfer of the NATCO and Medina wells by having the parties fill out the paperwork necessary to accomplish the transfer within a reasonable time. Further, once the case is remanded, the trial court should determine what amounts, if any, should be offset from the $24,385.20 monetary judgment against appellants.

By Baldwin, J.

Gwin, P.J., and

Wise, Earle, J., concur