[Cite as *Loch v. Myers*, 2021-Ohio-2623.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Leonard M. Loch

Appellant

v.

John S. Myers, et al.

Appellees

Court of Appeals No.     L-20-1159
                         L-20-1175

Trial Court No.  CI0201802761

**DECISION AND JUDGMENT**

Decided:   July 30, 2021

* * * * *

Marvin A. Robon and Zachary J. Murry, for appellant.

Richard R. Malone, for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} In this consolidated appeal, plaintiff-appellant, Leonard M. Loch, appeals

the August 21, 2020, and September 24, 2020 judgments of the Lucas County Court of

Common Pleas, in favor of defendants-appellees, John S. Myers, Valerie T. Myers, and Myers Property Holdings, LLC. For the following reasons, we reverse the trial court judgments.

## I. Background

{¶ 2} For many decades, the Loch family owned approximately 39.8 acres of land on Frankfort Road in Swanton, Ohio. At some point, Leonard Loch's sister, Sharon Stoll, became the titled owner of the property. Loch and his mother, Bertha, live in the home located on that property.

### A. The Loch family sells its property, but maintains an option.

{¶ 3} Financial difficulties led Stoll to sell the property to John and Valerie Myers, the owners of the neighboring property.[1] The parties executed a residential real estate purchase agreement and option on December 12, 2011. Under that agreement, Stoll—or her assignee—was granted the exclusive option to purchase the property back for $200,000, or alternatively, to purchase "any portion of the Property at Seller's discretion" for $5,140.00 per acre. The option was required to be exercised within one year of closing on the purchase agreement, with closing to occur 45 days from the date of exercising the option.

---

[1] The Myers transferred title to the property to Myers Properties Holding, LLC, on July 21, 2107. John and Valerie Myers are the sole members of the LLC.

2.

{¶ 4} The deadline for exercising the option passed without it being exercised. On February 1, 2013, the Myers entered into a lease agreement with Stoll and Loch whereby Stoll, Loch, and Bertha leased the home located on the property "yearly" for a monthly payment of $10 per month. The lease agreement contained a new option, allowing Stoll or Loch the option to purchase the home and up to ten contiguous acres for $5,140.00 per acre. The option was required to be exercised by February 1, 2014, with closing to occur within 45 days of exercising the option.

{¶ 5} Stoll and Loch purported to exercise the option via a letter dated January 31, 2014, but no closing ever occurred, allegedly because Farmers & Merchants State Bank, the mortgagor of the property, refused to release a ten-acre parcel from its mortgage.

### B. The Myers seek to evict Loch, and Loch files suit.

{¶ 6} On June 9, 2018, John Myers posted a notice to leave premises, demanding that Stoll, Loch, and Bertha leave the premises by June 13, 2018, for non-payment of rent. Stoll assigned her real estate option to her brother on June 14, 2018, and Loch filed a complaint in Lucas County Common Pleas Court that same day alleging three causes of action: (1) breach of the option agreement and specific performance; (2) wrongful eviction and injunction; and (3) enforcement of the option and damages. Loch maintained that the option to purchase ten acres had been properly exercised, a survey had been completed to split the ten acres from the property, and Loch stood ready and able to pay for the ten acres. He sought to enjoin the Myers from pursuing eviction while the case was pending. The Myers filed a counterclaim for eviction.

3.

## C. The parties reach a settlement.

{¶ 7} On April 8, 2019, just before trial, the parties reached a settlement and placed the substance of their agreement on the record. It was agreed that Loch would purchase up to five acres of land from Myers for $40,000, the precise boundaries of which would be established following a survey. Loch agreed to deposit the purchase price into his attorney's escrow account within 30 days. The parties explained:

[Loch's Counsel]: There will be up to 5 acres surveyed off by Garcia Survey, exclusive of the roadway—right of way. There will be deposited into an escrow account—into [counsel's] account?

[Myers's Counsel]: I'm satisfied with that. I need written confirmation that it's been received.

[Loch's Counsel]: Within 30 days. There will be a mortgage release from Farmers and Merchant Bank on the applicable legal description that Garcia Survey comes up with.

There will be an easement for a drainage tile out to the Frankfort Road where the farm field that is beyond the property. This legal description will include the encroachment that is on Leonard Loch's sister's property, Miss Stahl [sic].

And the new property line will be behind – start behind their home and run eastward, past the barn to the current line that the surveyor drew on the Courtroom Exhibit that we're submitting as part of the settlement.

**{¶ 8}** The Courtroom Exhibit ("Courtroom Exhibit 1") referred to by the parties was a drawing by surveyor, Anthony Garcia, from 2014. The trial judge examined Courtroom Exhibit 1 and acknowledged that the new survey would connect two parcels of property depicted on the exhibit. This looked to the judge to be "about 4 point something acres total." He explained to the Myers that "whatever that survey line shows connecting the two properties will be the acreage, whether it is 4.2 or 4.5 or 4.8, whatever that is," but he did not contemplate that it would be more than five acres.

**{¶ 9}** Important to the issues now before this court, the Myers's counsel set forth the consequences should Loch fail to fulfill his obligations under the agreement:

> The settlement contemplates depositing $40,000 in escrow within 30 days. In the event that money is not deposited, the settlement that I proposed, contemplates that there will be a Judgment Entry entered in this action granting a Judgment in favor of the Defendants on the issues relating to the option to purchase, eliminating the option to purchase and any obligation the Myers have to convey any part of this parcel to Mr. Loch, number one.
>
> And number two, also granting judgment on the–or the counter claim for eviction. So that the property will be vacated if the sale is not concluded as proposed.
>
> The court confirmed that these additional terms were agreeable to Loch:

[Loch's Counsel]: With the understanding that the survey is probably going to take six, eight weeks to get it done.

[Myers's Counsel]: But the money will be deposited 30 days from today's date.

[Loch's Counsel]: Yes.

[Myers's Counsel]: I understand the survey may take time, but– thank you.

{¶ 10} On April 10, 2019, the trial court entered an order indicating that a settlement had been reached and placed on the record, and it ordered counsel to submit a judgment entry of dismissal within 30 days. No judgment entry was filed. On May 24, 2019, the trial court entered a judgment entry of dismissal for want of prosecution. It granted the parties leave to file an amended judgment entry of dismissal and retained jurisdiction to enforce the parties' settlement agreement.

### D. Loch deposits the money, but the parties cannot agree on boundary lines. The parties file competing motions to enforce the settlement agreement.

{¶ 11} Loch deposited the money in his attorney's escrow account as required, but a disagreement ensued concerning the boundary lines drawn by the surveyor in a June 2019 survey. On September 19, 2019, the Myers filed a motion to enforce the settlement agreement. They contended that the survey provided to them by Loch proposed a split of the parcel that exceeded the size they agreed to and the expansion was inconsistent with the drawing that had been submitted as Court Exhibit 1. The Myers asked the trial court

6.

to enter an order extinguishing Loch's claimed right to purchase the property, dismiss Loch's complaint, grant an order of eviction, and award their legal costs and expenses. They insisted that this was the relief to which they were entitled under the terms of the settlement reached on April 8, 2019.

{¶ 12} On October 17, 2019, Loch filed his own motion to enforce the settlement agreement. He insisted that he had deposited the $40,000 in his lawyer's escrow account within 30 days of the April 8, 2019 hearing, and the surveyor prepared a split of the property that identified 5.031 gross acres and 4.610 net acres—less than the five acres agreed to by the parties. Loch explained that the Myers were merely "disputing the easterly boundary property line of about 10 feet and the northerly property line location." He characterized the Myers's objection as post-settlement remorse.

{¶ 13} The Myers filed a supplemental memorandum in support of their motion to enforce the settlement agreement. They again argued that the survey partitioned the property in a manner that was inconsistent with Court Exhibit 1 and insisted that despite advising Loch of the discrepancy and providing him the opportunity to obtain a revised survey, Loch failed to do so. They maintained that the terms of the settlement agreement provided that if Loch failed to conclude the purchase under the agreed-upon terms, a judgment would be entered terminating any right of purchase and ordering eviction.

{¶ 14} In a judgment entered November 15, 2019, the trial court acknowledged what Loch claimed—that the dispute was over the easterly boundary property line of about 10 feet and the northerly property line location. But, according to the court, the

7.

issue "was not whether it is five (5) acres or less but rather does the survey and legal description correspond to the lines drawn by the parties and counsel at the settlement hearing." It scheduled a hearing for November 21, 2019, so that it could pose questions to the surveyor. It warned that at that time, it would grant one of the parties' motions. And "[d]epending upon this ruling, the Court may then have to proceed with the eviction."

{¶ 15} The November 21, 2019 hearing had to be vacated due to the illness of one of the attorneys. The court scheduled a new hearing for February 28, 2020.

{¶ 16} The parties' attorneys continued discussions in the period between the two hearing dates, but negotiations apparently broke down around December 24, 2019. The Myers's counsel had told Loch's attorney that because of the costs they had incurred, they required an additional $10,000 from Loch, increasing the purchase price to $50,000. They also insisted that the east property line needed to be redrawn to create an access point from Frankfort Road to the farm field over an existing culvert. Loch maintained that an access road already existed so no access over the culvert was required, and he asked for an itemization of the Myers's expenses. He offered to increase the purchase price by $4,800. The Myers responded that they no longer wanted to sell and intended to implement the "second option under the terms of the settlement," which they claimed entitled them to a judgment on their counterclaim for eviction.

8.

**E. In lieu of a hearing, the parties submitted memoranda and affidavits for the court to consider.**

{¶ 17} Instead of going forward with the hearing scheduled for February 28, 2020, the parties agreed to file briefs and affidavits in support of their respective positions.

{¶ 18} Loch maintained that Court Exhibit 1 was the beginning of a survey, drawn in 2014, for a 2.4-acre parcel that included the house and barn but no additional storage. Loch said that he contacted Garcia Surveyors to carry out the intent of the settlement agreement, which was "to purchase not only the farm buildings and residence but also all the land west of the residence owned by the Defendants up to the residence of Plaintiff Leonard Loch's sister westerly of the property *up to a total of 5 acres.*" (Emphasis in original.) He contended that that survey had been preliminarily completed and stakes were put in the ground in June of 2019.

{¶ 19} Loch further explained that he and the Myers had finally agreed upon a drawing, but the Myers demanded an additional $10,000, then told Loch they were no longer willing to go forward with the sale and intended to evict him. Loch indicated his willingness to pay an additional $4,800, and he insisted that the terms of the settlement called for eviction only if Loch failed to timely deposit the $40,000.

{¶ 20} In support of his position, Loch filed his own affidavit and an affidavit from Anthony Garcia. Garcia in his affidavit explained his involvement with the property. He said that he worked on a survey for Myers in 2014, but no stakes were put in the ground at that time, no survey print was made—only a sketch was made—and it was for only 2.4 acres. In June of 2019, at Loch's request, he was asked to complete a

9.

survey in accordance with the settlement agreement. It was Garcia's opinion that the June 2019 survey complied with what was described in the transcript of the April 2019 settlement, however, the Myers's attorney contacted him to tell him that the north line was 32 feet longer and the east line was wider than it should be. Garcia revised the June 2019 survey to make the north line 32 feet shorter and he drew the eastern boundary line where it made sense. The new smaller survey has a net acreage of 3.983 acres on one parcel and .395 on the parcel next to Loch's sister's home for a total net acreage of 4.378 acres exclusive of roadway. Garcia described the differences between the 2014 drawing and the 2019 surveys:

- The 2014 drawing was for 2.4 acres and did not establish an east or north boundary line or dimensions for these property lines;

- The original 2019 survey was for 4.999 acres exclusive of roadway; and

- The revised 2019 survey is for 4.378 acres exclusive of roadway.

{¶ 21} The Myers responded that Loch unilaterally ignored and attempted to change the terms of the settlement agreement, and when challenged on the issue, refused for five months to "acknowledge his actions" or "to undertake the steps necessary to correct the survey." They maintained that even after purportedly agreeing to proceed in accordance with the terms of the settlement, Loch continued to insist on an east property line that was inconsistent with the agreement and refused to compensate the Myers for the additional expenses he forced them to incur. The Myers insisted that their decision to

10.

withdraw from the settlement agreement was justified and reasonable given Loch's breach of that agreement, and it was within their right to seek enforcement of the eviction remedy.

{¶ 22} The Myers, too, filed an affidavit from Garcia in support of their position. According to that affidavit, the Myers hired Garcia in 2014 to survey and prepare a legal description for the parcels in preparation for a proposed split, but terminated the project before completion. The sketch from 2014 depicted two portions of a larger parcel of the property. Garcia explained that Loch hired him in April or May of 2019, and he prepared a survey dated June 17, 2019. Loch did not provide him a copy of the 2014 drawing; did not advise him to survey the property as it was depicted in the 2014 drawing; did not advise him to include the extension of the north property line as depicted in the 2014 drawing; and did not advise him to establish the east property line on the west side of the existing culvert in the ditch (which could be used to provide access from Frankfort Road to the farm field located east of the survey parcel, which was to be retained by the Myers).

{¶ 23} Garcia further stated that Loch emailed him November 25, 2019, and asked him to prepare a revised survey using the dimensions depicted on the 2014 survey worksheet, and emailed him again on December 2, 2019, asking that he prepare a new survey in conformity with the 2014 survey worksheet dimensions with land between the houses added.

11.

### F. The court enforces the settlement agreement in favor of Loch.

{¶ 24} The trial court ruled on the parties' motions and issued a judgment entered March 5, 2020. In its judgment, the court expressed its frustration over the delay in what it characterized as a "fairly simple contractual dispute." It attributed the delay to Loch's failure to provide the surveyor with the settlement information and noted that it was to Loch's benefit to delay the agreement because he pays no rent or taxes on the property. Ultimately, however, the court observed that the new parcel drawing appeared to be satisfactory except for the east property line and the culvert that allowed the Myers access to their remaining property, and it acknowledged that Loch (via a December 23, 2019 email from counsel) offered to pay an additional $4,800 to complete the transaction.

{¶ 25} The court concluded that the settlement should be enforced in favor of Loch "upon the survey being modified to keep the culvert on the Myers's property or the Plaintiff granting to the Defendant a permanent easement for the required access." It required that Loch pay the additional $4,800 to the Myers "pursuant to counsels [sic] agreement of December 3, 2019" and that settlement be completed within 60 days of its order. It warned that if its entry was not enforced in a timely manner, it would revisit the issues.

{¶ 26} The next day, the Myers moved for reconsideration, questioning whether the court had reviewed and taken into account the facts set forth in Garcia's second affidavit—the one they had submitted. They questioned, also, whether the court had overlooked information indicating that the Myers were willing to proceed with the sale

12.

only if Loch paid an additional $10,000 to compensate them for extra expenses incurred due to Loch's delay. They explained that the $4,800 referred to in counsels' email correspondence was meant to be payment for the additional .61 acres that was not included in Court Exhibit 1—it was not intended to be accepted as reimbursement for their additional expenses. Finally, the Myers emphasized that the location of the east property line remained undetermined.

{¶ 27} Loch sought clarification of the court's March 5, 2020 judgment. He questioned whether he must pay $4,800 to the Myers even if no additional acreage was conveyed to him. He stated that he presumed that if no additional acreage was provided, he would not be required to pay the additional $4,800.

### G. Delays ensue and more motions are filed.

{¶ 28} The COVID-19 pandemic caused unforeseen delays in the parties' ability to complete the settlement. Counsel engaged in some back-and-forth email discussions in May and June of 2020, concerning adjustments to the property lines, including a 15-foot move of the east line for the access drive. On June 16, 2020, the Myers sent a specific proposal marking up the most recent survey with their suggested revisions and agreeing to accept $44,400. Eleven days later, having received no response from Loch, the Myers filed a motion to enforce the terms of the court's March 5, 2020 judgment. They requested that the court enter an order requiring Loch to place the full purchase price in escrow before July 2, 2020; secure a revised survey consistent with the March 5, 2020 order as it relates to the location of the east property line by July 15, 2020; secure

13.

approval of a parcel split from the appropriate government bodies by July 31, 2020; and close on the purchase of the parcel by August 15, 2020. They asked that Loch be evicted and ordered to vacate the property if he failed to complete these actions within the allotted time.

{¶ 29} On July 2, 2020, Loch filed a motion to require the Myers to convey the deed and an opposition to their motion "requiring change of court order." Loch asserted that he had escrowed $40,000, is willing to pay the additional $4,400, and obtained necessary permits and approvals from the Lucas County Health Department, the Lucas County Engineer, and the Lucas County Plan Commission. Loch insisted that the Myers already have an approved access to the property "just east of where they covered the ditch with a pipe," thus there was no longer a need for an additional 15-foot access point. He emphasized that the delays that occurred in obtaining government approvals resulted from the COVID-19 pandemic. Loch requested that the court order the Myers to transfer the property to him or his designee within 30 days and obtain a release of the mortgage on the property upon the escrowing of $44,400 with the title company.

{¶ 30} The Myers opposed Loch's motion to require them to convey the deed. They maintained that when Loch filed the lot-split application to the county plan commission, he misrepresented himself as their agent, and he submitted the application on February 18, 2020, two weeks before the court's March 5, 2020 judgment defining the parcel to be sold. They argued that the parcel identified in the lot-split application was, therefore, not the same as the parcel the court ordered to be conveyed, and Loch never

14.

sought to amend the application. The Myers insisted that Loch's motion sought to require them to convey a parcel different from the parcel the court identified in its March 5, 2020 judgment.

### H. The court changes its mind.

{¶ 31} On August 21, 2020, the trial court entered a judgment vacating its March 5, 2020 judgment, voiding the option to purchase from the April 2, 2011 agreement, denying Loch's motion to enforce settlement, granting the Myers's motion to enforce settlement, granting the Myers's request to evict Loch from the property, and denying as moot the Myers's motion to enforce the terms of the court's March 5, 2020 judgment and Loch's motion to require the Myers to convey the deed.

{¶ 32} On September 18, 2020, the court conducted a hearing "to execute the eviction and to determine how much time the Plaintiff might have before they be removed from the property." The court made clear its position that Loch failed to ever present a survey consistent with the parties' agreement:

> The Court: * * * First of all, I would indicate that I did not come here to reconsider the Court's order of August 21st of this year, but just in response to the arguments that were made, it is not my position to tell the surveyor what you agreed to.
>
> The surveyor on the first survey, was not even provided with Court's Exhibit number 1 because a survey could not have come out that way had

he had that Exhibit at his disposal. I assume he had it in the second one, and even the second one did not come out. But it is not my responsibility.

If the survey had been equivalent with Court's Exhibit Number 1, I would have been ruling in [Loch's] favor and making [the Myers], without any additional $10,000 or any additional money, transfer the property to [Loch] in conformity with the agreement of last year.

As far as your proposed exhibits, I saw those in the jury room. The photos of the barn, I'm not sure how that collapsed or what happened, but that was still the Defendant's property at the time. I mean, so that may be a separate lawsuit. It has nothing to do with this settlement. It has nothing to do with this particular case.

I saw both the surveys, which I think you said are Exhibits 1 and 2 from June of '19 and February of '20. Neither of those surveys comply with * * * Exhibit number 1.

{¶ 33} The court also made clear that it interpreted the settlement agreement consistent with the interpretation advanced by the Myers; that is, it interpreted the agreement to provide for judgment against Loch on his declaratory judgment action and in favor of the Myers on their counterclaim for eviction:

The court: Part of the agreement, as [the Myers's attorney] indicated, was if the $40,000 wasn't deposited within a certain amount of time. But then it went on to say if the agreement was not proceeded with,

16.

the Defendant's counterclaim could be ruled on which is what the Court has done.

We did have a discussion about 5 acres of property but because we didn't know what those dimensions were, we said it would not be in excess of 5 acres. So you just can't pick the 5 acres, we want to go over here 20 feet or we want to go over here 10 feet, we're still within the 5 acres.

The agreement was the Court's Exhibit number 1. From the day of the settlement until today's date there has been no survey, there has been nothing that has been consistent with Court's Exhibit Number 1.

The Court is going to grant the Plaintiffs 30 days to vacate the premises. If there is an appeal, I'll set a bond of a thousand dollars a month while the appeal is pending as it relates to a fair market rental for the property during that time period.

And as I said before, I'm shocked. I've never been so upset on a case in 30 years as a Judge that we couldn't work this out as attorneys, as human beings. I'm shocked that I have to rule on this. I don't want to evict these people but that's what the agreement is and because the agreement was not complied with, I am forced to do that. Not that I want to do that, but that is what I'm forced to do.

{¶ 34} The trial court's decision was memorialized in a judgment entered on September 24, 2020. It provided that Loch be evicted from the property within 30 days,

but granted a stay pending appeal provided that Loch deposit $1,000 per month with the Lucas County Clerk of Courts, representing rent for the property during the appeal. Because Loch had not been allowed to present exhibits or testimony at the September 18, 2020 hearing, he submitted a written proffer of evidence.

## I. Loch appeals.

{¶ 35} In separate notices, Loch appealed the August 21, and September 24, 2020 judgments. Those appeals have now been consolidated, and Loch assigns the following errors for our review:

> 1. The trial court committed reversible error by voiding the Parties' Settlement Agreement and entering Judgment in favor of the Defendants when the trial court took such action without first conducting evidentiary hearings.

> 2. The trial court committed reversible error in denying Plaintiff-Appellant's motion to enforce the Settlement Agreement when the evidence presented shows that Plaintiff-Appellant fully complied with his obligations under the terms of the Agreement.

## II. Law and Analysis

{¶ 36} Loch challenges the trial court's August 21, and September 24, 2020 judgments. He argues, first, that the trial court erred in voiding the parties' settlement agreement and entering judgment in favor of the Myers without first conducting an evidentiary hearing. He then argues that the trial court erred in denying his motion to

18.

enforce the settlement agreement because he fully complied with the terms of the agreement. We address Loch's assignments of error in turn.

## A. The Failure to Conduct an Evidentiary Hearing

{¶ 37} In his first assignment of error, Loch argues that the trial court was required to conduct an evidentiary hearing before issuing its August 21, and September 24, 2020 judgments because there were numerous factual and legal disputes. He also claims that an evidentiary hearing is statutorily mandated under R.C. 1923.07 before entering judgment in favor of a landlord in a forcible entry and detainer action. Loch insists that his "counsel was rebuffed in any and all attempts to present evidence or elicit testimony on either the Settlement Agreement or upon issues relating directly to the eviction."

{¶ 38} The Myers respond that the undisputed terms of the settlement agreement required four things: (1) the deposit, within 30 days, of the purchase price; (2) a survey; (3) the required approvals from local government authorities; and (4) the transfer of ownership at closing. They maintain that the first three requirements were solely Loch's responsibility, and while he performed the first requirement, he failed to perform the second, which precluded performance of the third and fourth requirements. They contend that the terms of the settlement specifically provided for eviction and dismissal of the option claim in the event of non-performance. The Myers acknowledge that in a contested eviction proceeding, an evidentiary hearing is customary and required, but they insist that no hearing was required here because Loch specifically consented to the eviction as a consequence of his failure to perform the terms of the agreement. They

19.

emphasize that the trial court had first-hand knowledge of the terms of the settlement agreement and those terms were placed on the record.

{¶ 39} The Myers further maintain that Loch was afforded an extended period of time to comply with the terms of the agreement and was permitted the opportunity to obtain a revised survey that would conform to the parties' agreement, but he failed to do so. They contend that the trial court correctly determined that Loch failed to fulfill his obligations under the terms of the settlement agreement and his failure to do so resulted in enforcement of the contract terms—"i.e., the dismissal of the claim that there was an existing purchase option relating to the Property, and the entry of an order evicting Mr. Loch from the Property."

{¶ 40} Generally speaking, it is true that where the existence of a settlement agreement or the meaning of its terms are disputed, "a trial court must conduct an evidentiary hearing prior to entering judgment." *Rulli v. Fan Co.,* 79 Ohio St.3d 374, 377, 683 N.E.2d 337 (1997). Here, however, the parties agreed to submit briefs and affidavits in lieu of a hearing. We must conclude, therefore, that Loch waived a right to a hearing on the parties' respective motions to enforce the settlement agreement. We see no reason why this waiver would not extend to the Myers's motion for reconsideration, which the court effectively granted in its August 21, 2020 judgment.

{¶ 41} With respect to Loch's claim that he was entitled to a hearing before being evicted, the Myers acknowledge that in a contested eviction proceeding, an evidentiary hearing is customary and required. *See, e.g., Hampshire Hts., Inc. v. Van Wormer,* 6th

20.

Dist. Lucas No. L-80-091, 1980 WL 351398, *1 (July 3, 1980) (requiring that evidence must be adduced in an eviction matter even though tenant failed to appear). They insist, however, that no hearing was required here because Loch specifically consented to the eviction as a consequence of his failure to perform the terms of the agreement.

{¶ 42} If, indeed, the terms of the settlement agreement provided for eviction in the event of Loch's non-performance, and if Loch, in fact, failed to perform, we would be forced to conclude that when Loch waived an evidentiary hearing on the motion to enforce the settlement agreement, he also waived a hearing on the eviction. But rather than specifically address this contention in this assignment of error, we address it in our discussion of Loch's second assignment of error.

### B. Denial of Loch's Motion to Enforce Settlement

{¶ 43} In his second assignment of error, Loch contends that the trial court judgment should be reversed—and the settlement agreement enforced in his favor—because he fully complied with his obligations under the settlement agreement. He argues that under the agreement, he was required to (1) deposit $40,000 into his counsel's escrow account within 30 days of the settlement, and (2) have a survey completed, creating a parcel conforming to Court Exhibit 1, consisting of five acres or less exclusive of road right-of-way. He insists that he did both these things and fulfilled the spirit of the agreement by securing required permissions and approvals from government agencies necessary for the transfer of the property. Accordingly, he argues, he fully performed under the plain language of the settlement agreement. He insists that the trial court

21.

abused its discretion and acted unreasonably, arbitrarily, and unconscionably in simply "throwing its hands up" and refusing to conduct the required evidentiary hearings and enforce the valid settlement agreement.

{¶ 44} The Myers dispute Loch's contention that the agreement required merely that the parcel be five acres or less. They insist that the parcel to be conveyed was the specific parcel described in Court Exhibit 1—with the north boundary line established by connecting the two parcels as depicted in that exhibit—but Loch tried to move the boundary lines. The Myers contend that Loch eventually modified his directions to the surveyor with respect to the north property line, but then failed to properly direct the position of the east property line. They insist that Loch was given 17 months to correct the survey, yet failed to do so. The Myers contend that the terms of the settlement specifically provided for eviction and dismissal of the option claim in the event of non-performance. They again emphasize that the trial court had first-hand knowledge of the terms of the agreement.

{¶ 45} A settlement agreement is "a contract designed to terminate a claim by preventing or ending litigation" and is governed by the law of contracts. *Savoy Hosp., L.L.C. v. 5839 Monroe St. Assocs., L.L.C.,* 6th Dist. Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 23. Like any contract, a settlement agreement requires "a meeting of the minds as well as an offer and an acceptance thereof." *Rulli v. Fan Co.,* 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997), citing *Noroski v. Fallet,* 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982). "To constitute a valid settlement agreement, the terms of the agreement must be

22.

reasonably certain and clear." *Id.* To enable a court to enforce a settlement agreement, the parties must have "expressed their intentions in a manner that is capable of being understood." *Id.*, citing 1 Corbin on Contracts (Rev. Ed.1993) 525, Section 4.1. "It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are." *Id.* If the essential terms of the agreement are vague, indefinite, or uncertain, it will be determined that no contract was created. *Id.*

{¶ 46} The Ohio Supreme Court cautioned in *Rulli* that "courts should be particularly reluctant to enforce ambiguous or incomplete contracts that aim to memorialize a settlement agreement between adversarial litigants." *Id.* "Since a settlement upon which final judgment has been entered eliminates the right to adjudication by trial, judges should make certain the terms of the agreement are clear, and that the parties agree on the meaning of those terms." *Id.*

{¶ 47} Here, the parties never reduced the terms of their settlement agreement to writing; rather, they orally recited the terms of their agreement and placed them on the court record. Nevertheless, an oral settlement agreement may be enforced "with the same degree of formality and particularity that applies to the enforcement of a binding contract." *Barstow v. O.U. Real Estate, III, Inc.,* 4th Dist. Athens No. 01CA49, 2002-Ohio-4989, ¶ 38, citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39, 285 N.E.2d 324 (1972).

23.

{¶ 48} The standard of review to be applied to a ruling on a motion to enforce a settlement agreement depends on the question presented. If the question is an evidentiary one, an appellate court will not reverse the trial court's finding if there was sufficient evidence to support such finding. *M3 Producing, Inc. v. Tuggle*, 2017-Ohio-9123, 91 N.E.3d 805, ¶ 11 (5th Dist.). If the dispute is a question of law, an appellate court must review the decision de novo. *Id.* The determination of whether a contract exists is a question of law. *Zimmerman v. Bowe*, 6th Dist. Lucas No. L-18-1200, 2019-Ohio-2656, ¶ 11.

{¶ 49} Neither Loch nor the Myers dispute that a settlement agreement exists here. They dispute the meaning of the terms of the agreement and whether or not Loch performed as required. The trial court, too, believed a settlement agreement existed; it interpreted the terms in favor of the Myers and found that Loch failed to perform.[2] Despite the parties'—and the court's—consensus on the fundamental issue of the existence of the agreement, we conclude otherwise. We find that essential terms of the agreement were vague, indefinite, or uncertain, thus no contract was created.

{¶ 50} To begin with, the settlement agreement provided for the transfer of real property. Although the sale price had been agreed upon, the property was as-of-then unidentified. In fact, the parcel had not been portioned off and did not yet exist.

---

[2] In his brief, Loch maintains that "[t]here was no basis for the trial court to vacate and/or void the valid Settlement Agreement between the Parties." In fact, the court did not void or vacate the agreement; rather, it enforced the agreement against Loch, finding that the failure of the parties to consummate the sale of the property entitled the Myers to judgment on Loch's claim and on their own counterclaim.

24.

Portioning off the property into an identifiable parcel required the parties to obtain a survey, legal descriptions, and various governmental approvals.

{¶ 51} "A contract for the sale of land must definitely point out the particular land to be conveyed or must furnish the means of identifying it with certainty." *Schmidt v. Weston*, 150 Ohio St. 293, 82 N.E.2d 284 (1948), paragraph three of the syllabus. "[A]n agreement for the sale of land is invalid and unenforceable [if] it fails to contain certain essential terms, as where a contract for the sale of property contains an inadequate description and a sale therefore cannot occur." 77 American Jurisprudence, 2d Vendor and Purchaser, section 524 (2021).

{¶ 52} Here, the agreement at issue is a settlement agreement and not a real estate purchase agreement. But because the subject of the settlement agreement *is* an agreement to enter into a real estate purchase agreement, an adequate description of the land was an essential term here, and this term was missing.

{¶ 53} Certainly, the parties had a rough idea of what the parcel would look like— the drawing marked as Court Exhibit 1. But the acreage and boundary lines remained undetermined, and Loch never produced a mutually-agreeable survey. Although the Myers may maintain that the failure to produce a mutually agreeable survey is actually evidence of Loch's failure to perform under the agreement—as opposed to evidence that no settlement agreement was created—we believe this fact bolsters our conclusion that no meeting of the minds existed in the first place. This is because even after being given the

settlement transcript and Court Exhibit 1, the surveyor was unable to produce a survey that conformed to the purported agreement.

{¶ 54} In his affidavits (one submitted for Loch, one for the Myers), the surveyor, Garcia, indicated that before creating the June 2019 drawing, Loch provided him the settlement transcript, and before revising the survey, he was provided Court Exhibit 1. Despite the surveyor having this information at his disposal, he was not able to produce a survey that the parties agreed upon. The court commented:

[The court:] The surveyor on the first survey, was not even provided with Court's Exhibit number 1 because a survey could not have come out that way had he had that Exhibit at his disposal. I assume he had it in the second one, and even the second one did not come out.

The surveyor's inability to produce a conforming survey—even after being provided with all pertinent information—demonstrates the vagueness, indefiniteness, and uncertainty of the parties' purported settlement agreement. *Compare McLaughlin v. Sandlin*, 2d Dist. Montgomery No. 7257, 1981 WL 2567, *6 (Oct. 14, 1981) ("The important point is the parties at the time of the contract to purchase knew what the exact configuration of the 34 acres would be as the result of the survey. The survey completed before the closing caused neither seller [n]or buyer any problem."). Because the description of the land was inadequate, we conclude that the settlement agreement lacked essential terms.

{¶ 55} We are aware of at least one case where the court found that a land contract did not fail due to the absence of a detailed property description, despite the fact that the

26.

land at issue still needed to be parceled off. In *Phillips v. May*, 11th Dist. Geauga No. 2003-G-2520, 2004-Ohio-5942, the defendant owned 15.589 acres of land. One half was unimproved and the other contained "a 'brick cottage' with a driveway leading out to Taylor May Road, a lake, a lawn area, and several sheds or out buildings." *Id.* at ¶ 3. The parties' written agreement provided that defendant would sell plaintiff "Brick Cottage[,] 11327 Taylor May Road[,] 'approx 7 ½ acres x 300′ Approx frontage.'" *Id.* at ¶ 4. Defendant eventually claimed that she never agreed to sell the property at all. One of the arguments she asserted to try to avoid the agreement was that the terms were uncertain as to the description of the property being sold.

{¶ 56} The trial court concluded that it was clear from the evidence that the parties agreed as to the acreage, the location of the easterly boundary, the back property line, and the westerly line. It found that "the westerly boundary line would parallel the easterly line, * * * the back or northerly line would connect the two side yard lines," and "[t]he depth or length of the side yard lines would be determined by dividing the square feet in 7 ½ acres (43,560 x 7.5 = 326,700) by 300, resulting in side property lines of approximately 1,089 feet." *Id.* at ¶ 34. The appellate court agreed with the trial court that the manner of dividing the property was not uncertain because it was clear that plaintiff was purchasing the parcel that contained the brick cottage, "[t]he disputed parcel's total frontage on Taylor May Road is 604 feet," therefore, "any division of the parcel providing for 300 feet of frontage on Taylor May Road will bisect the parcel into two, almost equal, sections" as provided for in the agreement. *Id.* at ¶ 35. Accordingly,

27.

there was no question as to which portion of the parcel was intended in the agreement, and the court found the agreement enforceable.

{¶ 57} The present case is not so simple. The agreement was for *up to* five acres of an almost 40-acre piece of property, the precise acreage was unknown—the trial court acknowledged that it could be "4.2, 4.5, 4.8, whatever" acres—a right-of-way needed to be established, an easement for a drainage tile had to be provided for, and the property line had to connect to Loch's sister's property. All these details needed to be worked out in the context of an already-contentious relationship between the parties. We find, therefore, that the absence of a detailed description of the property to be transferred rendered the settlement agreement invalid. *See, e.g., Ward v. Ward*, 4th Dist. Vinton No. 93CA491, 1995 WL 75391, *2–3 (Feb. 22, 1995) (finding divorce decree which attempted to incorporate parties' in-court settlement was vague and unenforceable where it provided that two acres of 11-acre parcel would be transferred to wife but did not identify the precise land and boundaries).

{¶ 58} Because we conclude that no settlement agreement existed, we reverse and vacate the trial court's August 21, 2020 judgment, which enforced that agreement in favor of the Myers and voided the April 2, 2011 option to purchase, in effect entering judgment in favor of the Myers on their counterclaim for eviction and Loch's complaint for declaratory judgment (even though those claims had been dismissed without prejudice). This means that the trial court's September 24, 2020 judgment evicting Loch must also be reversed and vacated.

28.

### III.  Conclusion

{¶ 59} We find Loch's first assignment of error well-taken, in part, and not well-taken in part.  We find that the trial court did not err in failing to conduct an evidentiary hearing on the motions to enforce settlement agreement because the parties waived their right to a hearing.  But given that the purported settlement agreement—which the Myers allege provided for eviction in the event of Loch's non-performance—is unenforceable, we find that Loch did not waive his right to a hearing *on the eviction* through the alleged settlement agreement.  Accordingly, the trial court erred in evicting Loch without a hearing.

{¶ 60} We find Loch's second assignment of error not well-taken because the trial court did not err by denying his motion to enforce settlement agreement.  But we must nonetheless reverse the August 21, and September 24, 2020 judgments of the Lucas County Court of Common Pleas because, upon our de novo review, we find that no valid settlement agreement existed.  Accordingly, both parties' motions to enforce the settlement agreement should have been denied.  We remand this matter to the trial court where it shall be reinstated to the court's litigation docket.

{¶ 61} The parties are ordered to share in the costs of this appeal under App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

29.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.