[Cite as *State v. Roper*, 2026-Ohio-863.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/University of Toledo

    Appellee

v.

Kevin Roper

    Appellant

Court of Appeals No. L-25-00067

Trial Court No. CVF-24-01811

**<u>DECISION AND JUDGMENT</u>**

Decided: March 13, 2026

\* \* \* \* \*

Thomas L. Sooy, Esq., and
Robert A. Schuerger II, Esq., for appellee.

Ali Nour, Esq., for appellant.

\* \* \* \* \*

**OSOWIK, P.J.**

{¶ 1} This is an appeal of a February 3, 2025 judgment of the Toledo Municipal Court, granting appellee's motion to enforce a settlement agreement, finding that an enforceable settlement agreement had been negotiated between the debtee, University of Toledo ("Appellee") and the debtor, Kevin Roper ("Appellant"), in resolution of a pending collection action filed by appellee against appellant for $10,199.02, owed for educational courses taken by appellant. For the reasons set forth below, this court affirms the judgment of the trial court.

**{¶ 2}** Appellant sets forth the following sole assignment of error:

**{¶ 3}** "The trial court erred in finding that the parties settled the matter []."

*Case Background*

**{¶ 4}** The following facts are derived from the record of evidence presented to the trial court. On January 26, 2024, appellee filed a collection complaint against appellant in the Toledo Municipal Court for $10,199.02. This debt was incurred by appellant upon taking courses at the University of Toledo during the 2008-2009 school year.

**{¶ 5}** Subsequent to taking the courses, appellant failed to tender payments towards the debt that he had incurred in taking the courses. Prior to the January 26, 2024 collection filing, appellee had collected approximately $1,000 of the amount owed via tax return garnishments against appellant. Given that only a marginal amount of the debt had been recovered, and a considerable balance remained outstanding despite ongoing collection efforts, appellee determined that it had become necessary to file the subject collection action.

*Initial Settlement Negotiations*

**{¶ 6}** One of the primary pieces of evidence submitted in this case ("Exhibit 2") consists of email communications reflecting ongoing settlement negotiations between the parties. Exhibit 2 encompasses the chronological communications setting forth a series of offers, counteroffers, and the eventual terms of the settlement agreement.

**{¶ 7}** The following is established by Exhibit 2. On July 24, 2024, appellant offered $1,000 as full and final settlement, in exchange for the extinguishment of the $10,199.02 balance owed to appellee. On August 28, 2024, appellee declined the initial 2.

settlement offer, and tendered a counteroffer of $5,500 as full and final settlement of the $10,199.02 balance owed, constituting approximately a 50% write-down of the debt owed by appellant.

{¶ 8} On August 29, 2024, appellant rejected the $5,500 counteroffer, and next offered payment of $2,000 as full and final settlement, in exchange for the extinguishment of the $10,199.02 owed by appellant to appellee, to be accompanied by a notice of voluntary dismissal with prejudice.

{¶ 9} Later that same day, appellant's $2,000 settlement offer was rejected by appellee.  Several hours later, appellant replied to appellee that, "[A]lthough he doesn't wish to litigate, he indicated he that he may file for bankruptcy [if UT persists on the collection action]."  It was further conveyed that appellant remained open to settlement offers with appellee, stating, "If [UT] would like to make [another settlement offer] then I will obviously take anything back to client."

{¶ 10} On September 3, 2024, appellee tendered a final settlement offer to appellant, stating, "UT's offer remains $5,500 in full and final settlement of the balance. Let me know."

*Final Settlement Conference Call, Meeting of the Minds*

{¶ 11} Later on September 3, 2024, appellant replied, contacting appellee requesting, "Do you have [a] quick chance to discuss this? I know it's late in the day, but we're scheduled to appear [for a pretrial conference] in the morning."  Shortly thereafter, the parties conducted a final settlement conference call, at appellant's request, in which clear and perceptible settlement terms were discussed and finalized.  The settlement

3.

conference call was recorded, admitted into evidence, and will be discussed in detail below.

{¶ 12} On September 4, 2024, in accordance with the terms outlined in the settlement conference call the previous day, appellee contacted appellant conveying, "Ali-we are settled for $5,500 at $400/month. I will circulate an entry. Thanks." One minute later, appellant affirmatively, unconditionally replied, "Thanks, Tom. Are we still calling into the court?"

{¶ 13} Three minutes later, appellee responded, "I am on the line now waiting for the court. I can advise of our pending settlement." Appellant then affirmatively replied, "I'm not calling in [because the case settled]."

{¶ 14} Neither the chronological chain of email settlement negotiations, the final settlement conference call, or the subsequent set of settlement agreement confirmation emails, affirming the settlement agreement and notifying the court of same, set forth caveats, conditions, or indicia arguably suggesting that the settlement agreement was merely "abstract" and without legal bearing, as argued by appellant upon appeal.

*Motion & Hearing to Enforce Settlement Agreement*

{¶ 15} Appellant subsequently refused to execute the draft settlement agreement and corresponding entry prepared by appellee memorializing the above-detailed settlement agreement. On December 27, 2024, appellee filed a motion to enforce the settlement agreement.

{¶ 16} On February 3, 2024, the trial court conducted an evidentiary hearing on appellee's motion for enforcement. During the motion hearing, the trial court was

4.

presented with, and carefully considered, the Exhibit 2 email communications between counsel for both parties reflecting the settlement discussions and confirmation of the settlement agreement, as well as the flash drive recording of the September 3, 2024 final settlement conference call between the parties which outlined the terms of the agreement.

{¶ 17} During the course of the motion hearing, in a final attempt to resolve the matter with an additional accommodation of appellant, given counsel for appellant's representation to the trial court that the sticking point underlying appellant's lack of cooperation was grounded in appellant's claimed financial strain, the trial court facilitated an offer to appellant of a 50% reduction in the agreed upon monthly payment, lowering it from $400/month to $200/month. Appellant refused both the trial court's proposal of halving the agreed upon monthly payment amount, and made clear that he was refusing to agree to anything. Given appellant's unyielding position, the trial court proceeded to a determination on the motion to enforce on the merits.

*Granting of Motion to Enforce*

{¶ 18} The trial court held, in relevant part,

> So we've listened to the tape [of the final telephone settlement conference call] again. And on the record, again, the Court feels that there is an agreement, by phone. . .Which I have in writing as Exhibit B [2], and an email saying 'The student has agreed to pay the $5500. However, [appellant] has requested to pay it in [$400/month] installments. [Appellant] will consent to judgment on the full balance as requested in the complaint; $10,199.02 plus continuing interest. . .Unfortunately, [appellant] is [now] not agreeing to anything. . .That leaves it in the Court's hands. . .The Court. . .does find that an agreement was made over the phone, and was furthered by that notice [via email and telephone] to the Court, that an agreement was made. . .The Court is finding. . .that the settlement agreement shall be enforced.

5.

{¶ 19} On February 25, 2025, the trial court filed the judgment entry granting the motion to enforce the settlement agreement, finding in relevant part, "The court finds that a legally enforceable settlement agreement was entered into on September 4, 2024." Pursuant to the terms of the settlement agreement, the court ordered that, "Plaintiff is granted judgment in sum of $10,199.02" but that, "Plaintiff shall not be permitted to execute upon the judgment so long as Defendant pays the sum of $5,500, which shall be payable by Defendant in monthly installments of $400. Upon payment of $5,500, subject to the payment schedule outlined herein, the judgment shall be satisfied and Plaintiff agrees to file a motion to vacate the judgment and dismiss the action." The trial court further ordered that if Defendant fails to pay according to the schedule, then, "Plaintiff may execute upon this judgment only after it gives notice to Defendant of any default hereunder." This appeal ensued.

*Assignment of Error: Settlement Agreement Enforceability*

{¶ 20} In the sole assignment of error, appellant argues that the trial court erred in granting appellee's motion to enforce the settlement agreement. We do not concur.

{¶ 21} As held by this court in *Loch v. Myers*, 2021-Ohio-2623 (6th Dist.), ¶ 44-48,

> A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and is governed by the law of contracts. *Savoy Hosp., L.L.C. v. 5839 Monroe St. Assocs., L.L.C.*, 6th Dist. Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 23. Like any contract, a settlement agreement requires a meeting of the minds, as well as an offer and acceptance thereof. *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997), citing *Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982). *To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear*. *Id*. *To enable a court to*

*enforce a settlement agreement, the parties must have expressed their intentions in a manner that is capable of being understood. Id. . . . If the essential terms of the agreement are vague, indefinite, or uncertain, it will be determined that no contract was created. Id. . . .* The standard of review to be applied to a ruling on a motion to enforce a settlement agreement depends on the question presented. *. . If the dispute is a question of law, an appellate court must review the decision de novo. Id. . . . The determination of whether a contract exists is a question of law.* Zimmerman v. Bowe, 6th Dist. Lucas No. L-18-1200, 2019-Ohio-2656, ¶ 11. (Emphasis added).

In conjunction, as held in *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173 (8th Dist.), ¶ 16-17,

Settlement agreements are generally favored in the law. *Szmania v. Szmania*, 8th Dist. Cuyahoga No. 90346, 2008-Ohio-4091, ¶ 8, citing *Vasilakis v. Vasilakis*, 8th Dist. Cuyahoga No. 68763. It is axiomatic that a settlement agreement is a binding contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party. *Continental* at 502, 660 N.E.2d 431. Thus, a settlement agreement is an issue of contract law.

In applying the above-discussed governing legal guidelines to this case, in order to determine if the trial court correctly granted appellee's motion to enforce, we have carefully reviewed the record of evidence, paying particular attention to the email chain of settlement offers, counteroffers, terms of the agreement, the transcript of the motion to enforce hearing, and the flash drive recording of the September 3, 2024 final settlement conference call.

{¶ 22} As discussed above, and as shown by Exhibit 2, the email chain between the parties clearly reflects that on July 24, 2024, appellant offered $1,000 to appellee in full and final settlement of the case. On August 28, 2024, appellee rejected the offer, and presented a counteroffer of $5,500 in full and final settlement of the case. On August 29, 2024, appellant rejected the $5,500 counteroffer, and offered $2,000 to appellee in full

7.

and final settlement of the case.  Appellee rejected the $2,000 offer.  Later on August 29, 2024 appellant conveyed to counsel for appellee that he would entertain additional settlement offers.

{¶ 23} On September 3, 2024, appellee again offered a full and final settlement of the case, in exchange for $5,500 to be paid by appellant towards the $10,199.02 debt owed, unequivocally stating, "UT's offer remains $5,500 in full settlement of the balance. Let me know."  Later on September 3, 2024, appellant replied and requested that a final settlement conference call be held that same day, communicating to appellee, "Tom, do you have a quick chance to discuss this?  I know it's late in the day, but we are scheduled to appear [at the trial court] in the morning.  If so, please call my cell (419) 376-7623."

{¶ 24} At appellant's request, appellee thereafter called appellant.  We have carefully listened to the flash drive recording of the settlement conference call between the parties.

{¶ 25} At the outset of the call, appellant states, "Let's get this [settlement of the case] over the finish line."  In response to appellee's last settlement offer of $5,500, made earlier that same day, appellant states, "My guy says he can pay the $5,500, he just can't get it to you all at once, can you put him on a payment plan?"  Appellee replies that a payment plan is acceptable and requests that appellant enumerate a proposed monthly payment amount.  Appellant states, "$400/month."  Appellee replies, "Let me see what I can do on that [getting approval by UT on setting the payment amount at $400/month]." Appellant then states, "You [appellee] can reserve a judgment of $10,000 and if [appellant] pays the $5,500 you [appellee] agree to vacate and dismiss the [collection

8.

judgment against appellant]." Thus, the terms of the settlement agreement were mutually, clearly set forth, with the only outstanding matter remaining having UT accept the proposed payment plan of $400/month.

{¶ 26} On September 4, 2024, at 8:44a.m., the morning after the above-discussed settlement conference call, appellee communicated acceptance by UT of the sole remaining issue, setting the payment plan amount at $400/month, stating to appellant, "Ali-we are settled for $5,500 at $400/month. I will circulate a [settlement] entry." Appellant affirmatively, unconditionally replies, "Thanks, Tom. Are we still calling into the court?" Appellee replies, "I am on the line now waiting for the court. I can advise of our pending settlement." Appellant then replies, "I'm not calling in [because the case settled]."

{¶ 27} In principal support of this appeal, appellant summarily argues that he, "was speaking in the abstract over the telephone [settlement conference] call [with appellee], and that [he lacked] authority to settle the matter." The record reflects otherwise.

{¶ 28} As outlined and discussed in detail above, the record contains a series of direct, clear, unconditional communications between the parties, all expressly in singular pursuit of a voluntary settlement agreement in this case. The record shows that following a series of offers and counteroffers, on September 3, 2024, at 10:51a.m., appellee communicated to appellant, "Ali-in response to [the] offer of $2,000, UT's offer remains $5,500 in full settlement of the balance. Let me know." The record then shows that, in response the final offer of $5,500 by appellee, on September 3, 2024, at 4:53p.m.,

9.

appellant communicated to appellee, "Do you have a quick chance to discuss this?. . .If so, please call my cell (419) 376-7623."

{¶ 29} The recording of the ensuing settlement conference call reflects that appellant conveyed, "My guy says he can pay the $5,500 [the last offer of appellee]. . .Can you put him on a payment plan?. . .I'm thinking $400/month. . .You [UT] can reserve a judgment of $10,000, if he pays the $5,500, you agree to file [to] vacate and dismiss [the collection judgment against appellant]."

{¶ 30} The recording shows that appellee agreed to the terms, with the sole caveat being the need to verify U.T.'s acceptance of setting the payment plan amount at $400/month. The following morning, appellee communicated to appellant that the $400/month payment plan was accepted and states, "Ali-we are settled for $5,500 at $400/month. I will circulate an entry." Appellant confirms, unconditionally replying one minute later, "Thanks."

{¶ 31} No caveats or conditions were set forth, so as to arguably suggest that a meeting of the minds on the settlement agreement had not occurred.

{¶ 32} Accordingly, we find the terms of the settlement agreement to be reasonably certain and clear, such that they are capable of being understood. Appellant has not demonstrated that the essential terms of the agreement were vague, indefinite, or uncertain so as to arguably maintain that there was not a meeting of the minds of the parties in reaching the subject settlement agreement.

{¶ 33} Wherefore, upon our de novo review, and in accord with *Loch* and *Rulli*, we find that the trial court did not err in determining that an enforceable settlement

10.

contract was reached between the parties and in, therefore, granting appellee's motion to enforce that settlement agreement. We find appellant's assignment of error not well-taken.

{¶ 34} On consideration whereof, the judgment of the Toledo Municipal Court is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.
_____
JUDGE

Christine E. Mayle, J
_____
JUDGE

Charles E. Sulek, J
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.